BARKSDALE v. LEARNARD ET AL.

[73 South. 736, Division A.]

1. VENDOR AND PURCHASER. *Innocent purchaser. Record notice.*
    A purchaser of land is not charged with constructive notice of the
    recitals of deeds of trust thereon which do not appear in his
    chain of title.

2. VENDOR AND PURCHASER. *Innocent purchaser. Duty of inquiry.*
    That a purchaser of land had actual knowledge of a deed of trust
    thereon, imposed upon him no duty of inquiring into the state
    of the title, other than that with which he was charged by rea-
    son of such deed of trust being of record.

3. TENANCY IN COMMON. *Acquisition of superior title.*
    Where one cotenant purchases an outstanding superior title to the
    common property, he acquires thereby the legal title to the
    whole of it, but holds such title in trust for the benefit of
    those of his cotenants who may wish to avail themselves of it
    by contributing or offering to contribute their proportion of the
    purchase money, which right, as between him and his cotenant,
    will not be barred by mere lapse of time, but only when the de-
    lay to assert it, is accompanied by circumstances which give rise
    to an estoppel.

4. VENDOR AND PURCHASER. *Innocent purchaser. Undisclosed trust.*
    A *bona-fide* purchaser from one having the legal title, takes it
    free from a trust for a cotenant of the seller when the pur-
    chaser had no actual or constructive notice of such trust.

5. VENDOR AND PURCHASER. *Innocent purchaser. Equity of infant.*
    An infant having an equity in land has no better standing that an
    adult, as against an innocent purchaser of the land from one
    having the legal title.

6. VENDOR AND PURCHASER. *Innocent purchaser.*
    A purchaser from an innocent purchaser stands in the position of
    an innocent purchaser, irrespective of notice.

APPEAL from the chancery court of Monroe county.
HON. A. J. McINTYRE, Chancellor.

Suit by H. Clay Barksdale against Mrs. J. P.
Learnard and others. From a decree, complainants
appeal, and D. R. Herron takes a cross appeal.

The facts are fully stated in the opinion of the court.

*Gates T. Ivy* and *Roberds & Beckett,* for appellant.

*Critz & Critz, Paine & Paine* and *Leftwitch & Tubb,* for appellees.

SMITH, C. J., delivered the opinion of the court.

This is a suit for the partition of land instituted by appellant, who claims to be the owner of a one-half interest therein.

In 1887 Dr. T. W. Spruill died seised and possessed of the land, leaving as his heirs at law his widow, two sons, and a daughter, Mrs. Maggie S. Barksdale. In May, 1892, Mrs. Spruill and her two sons, by deed duly executed and recorded, conveyed their interest in the land to Mrs. Barksdale, and she continued the owner thereof until her death, which occurred October 2, 1893. She left surviving her as her sole heirs her husband, H. C. Barksdale, and one son, H. Clay Barksdale, the appellant who was then an infant four years old. In January, 1893, prior to her death, Mrs. Barksdale and her husband executed a deed of trust to Hearn & Co. to secure the payment to him of their joint notes aggregating the sum of three thousand, three hundred thirty-six dollars and fifty cents due January 1, 1894 and 1895, and advancements to be thereafter made by Hearn to them. That the grantors in this deed of trust were husband and wife was not disclosed either in the body or in the acknowledgment thereof. On February 1, 1894, after Mrs. Barksdale's death, her husband, H. C. Barksdale, executed another deed of trust to Hearn & Co. on "all the interest of the party of the first part" in the land described in the former deed of trust. On March 15, 1898, the deed of trust executed by Mrs. Barksdale to Hearn & Co. was foreclosed and the land bought in by H. C. Barksdale for the sum of four thousand, nine hundred and fifty dollars. The deed executed to him by the trustee pursuant to this sale acknowledged payment of this sum, but it appears from the

evidence that no money was in fact paid by Barksdale, but that the amount of his bid was credited by Hearn & Co. on the notes given by Mr. and Mrs. Barksdale, and Barksdale then executed to them a new note for the sum of five thousand, five hundred dollars securing the payment thereof by a deed of trust on the land duly executed and recorded. On April 25, 1898, Barksdale executed a second deed of trust on the land to Hearn & Co. securing the payment to them of the sum of five thousand, five hundred dollars to correct an error in the first deed of trust executed by him. In the preambles of both of these deeds of trust after the name of the grantor, H. C. Barksdale, appears in parenthesis the word "widower." Barksdale seems to have been living on the land at the time of his wife's death, but some time thereafter and prior to the year 1900 he removed therefrom, and did not thereafter live thereon. His son, appellant, resided with him. On January 1, 1900, H. C. Barksdale sold the land to R. D. Herron by warranty deed for the sum of eight thousand, six hundred thirty-two dollars, the receipt thereof being acknowledged in the deed, and with which the notes due by Barksdale to Hearn & Co. were paid and Hearn's deed of trust satisfied. At the time Herron made this purchase he saw the deed of trust given by Mrs. Barksdale and her husband to Hearn & Co., but made no inquiry into the state of the title to the land. He did not know until some time after his purchase of the land that Maggie S. and H. C. Barksdale were husband and wife, nor that Mrs. Barksdale was dead and had left a son surviving her. The only notice he had as to the state of the title was that with which he was charged by the recorded deeds and deeds of trust dealing therewith. Herron immediately went into possession of the land and continued in possession thereof until he sold the same to appellees Learnard and Walker. On December 3, 1906, Herron sold forty acres of the land to Fred and Felix Walker for a cash consideration of one thou-

sand, two hundred dollars; the Walkers on the same day executing to him a deed of trust to secure the payment of three notes aggregating the sum of one thousand, three hundred fifty-seven dollars and sixty-eight cents, which deed of trust, so far as the record discloses, has never been satisfied. One of the Walkers afterwards executed a deed of trust to the First National Bank of Aberdeen to secure the payment to it of an indebtedness due it by Walker, which deed of trust is still in full force and effect. On December 3, 1906, Herron executed a deed of trust on the land, excepting that sold to the Walkers, to W. A. Kirkpatrick to secure a note for six thousand dollars due him by Herron, which note and deed of trust securing it were by Kirkpatrick assigned in July, 1910, to G. B. Gehlert. On August 23, 1910, Herron sold the land, excepting that previously sold by him to the Walkers, by deed duly executed and recorded, to J. P. Learnard, the consideration therefor being seven thousand dollars in cash, the assumption by Learnard of six thousand dollars due by Herron to Gehlert, and four notes executed to Herron by Learnard for one thousand, seven hundred fifty dollars each, due respectively July 22, 1911, 1912, 1913, and 1914. All of these notes except the last had been paid by Learnard when the bill in this case was filed. Learnard died on April 30, 1913, and by last will and testament devised the land to his widow and two children, Robert and Josephine. H. C. Barksdale, appellant's father died in December, 1906; and appellant became twenty-one years of age on August 9, 1910. As the decision of the cause does not turn upon any knowledge which appellant may or may not have had of his rights in the premises prior to the filing of his bill, a statement of his claim and of the evidence relative thereto is not here material.

The parties defendant to the bill are Herron, Mrs. Learnard, her children, the Walkers, and the parties now holding deeds of trust on the land. The prayer of the

bill is for a partition of the land and for an accounting to appellant by the Learnards and Walkers for the rents and profits thereof and for appropriate relief with reference to the incumbrances thereon.

One of appellees' defenses to the bill is that they are all *bona fide* purchasers and incumbrancers of the land, as the case may be, for value without notice of appellant's claim to an interest therein.

Appellant denies that appellees are purchasers and incumbrancers of the land for value without notice of his claim thereto, and contends that, conceding this to be true, such defense is not available against him, because: First, the purchaser for value without notice defense is available only against the holder of a secret equity, and that his interest in the land is legal, and not equitable, for the reason that the purchase thereof by his cotenant at the trustee's sale inured to his benefit; and, second, he was an infant at the time the various deeds and deeds of trust set up by appellees were given.

The court below held that "Herron bought said land with notice of complainant's interest therein," that the Walkers "paid a valuable consideration therefor without notice of complainant's claim," that Learnard purchased from Herron without notice of complainant's interest in the land, and that his widow and children are entitled to the protection accorded a *bona fide* purchaser without notice, except as to the note and interest thereon executed by Learnard to Herron remaining unpaid at the time appellant's bill was filed, and that Gehlert, Kirkpatrick's assignee, and the First National Bank of Aberdeen were innocent incumbrancers for value without notice of appellant's claim and decreed that the only relief to which appellant was entitled was to receive from the Learnards the money due on J. P. Learnard's unpaid note to Herron. From this decree there is a direct appeal by H. Clay Barksdale, complainant in the court below, and a cross-appeal by Herron.

Counsel for appellant do not claim that Herron had any actual knowledge of appellant's interest in the land, but that he must be charged with constructive notice thereof for the reason that, in the language of counsel's brief:

"(a) The lands were deeded by W. B. Brock and husband, S. M. Brock, in May, 1892, to T. W. Spruill. The next conveyance is from Jno. B. Spruill and Sarah E. Spruill to Maggie S. Barksdale. The title stood in T. W. Spruill. Why were Jno. B. Spruill and Sarah E. Spruill making a deed to it? What interest had they in the land? That is the human and natural inquiry. An investigation would have shown that they were heirs of T. W. Spruill and would have revealed that Maggie S. Barksdale was an heir also, Jno. B. Spruill, son, Sarah E. Spruill, wife, and Maggie Spruill Barksdale, daughter, being the only heirs of T. W. Spruill. T. W. Spruill owned the land on the record. A mere inquiry as to why he did not sign the deed (the most natural inquiry to make) would have disclosed that he was dead and explained why John E. Spruill, and Sarah E. Spruill signed the deed as his heirs, and that Maggie S. Barksdale was the only heir, she not joining as grantor because she was grantee. Sufficient in this, it seems, to give any prudent purchaser notice."

In passing we will say that Herron was, of course, charged with notice that the land was owned by Mrs. Barksdale at the time of the execution of the deed of trust by her and her husband to Hearn & Co. Taking up again the language of counsel:

"(b) The next record after the property was deeded to Mrs. Barksdale is the deed of trust signed by Maggie S. Barksdale and H. C. Barksdale to McClellan, trustee, dated January 16, 1893. The title was in Mrs. Barksdale. Why was H. C. Barksdale signing unless he was the husband, and this land was a homestead?

"(c) The deed of trust provides for one thousand, five hundred dollars advancements, which would indi-

cate that this land was being occupied and used by the grantors.

"(d) Again H. C. Barksdale, on January 1, 1894, not quite a year later, signed a deed of trust on the same land to A. M. Chandler, trustee, for Hearn & Co. Barksdale had no title to the land. Why did he sign the deed of trust alone? A mere inquiry would have revealed that Mrs. Barksdale was dead, and then the natural inquiry would be, Who were her heirs?

"(e) Also in this same deed of trust made in January after the death of Mrs. Barksdale in October conveyed 'all the interest of the party of the first part in the following land.' The joint deed of trust had no such provision. Why this restriction? To answer the question reveals that the grantor had only half interest, and his son, the complainant, the other.

"(f) Next is the deed from McClellan, trustee, to Barksdale, dated March 15, 1898, under the sale of the property under the joint deed of trust—a joint tenant purchasing the property. The same day Barksdale gave the deed of trust to Roane, trustee, for Hearn for five thousand, five hundred dollars, showing any prudent purchaser this was merely a paper transaction—an effort to get the legal title out of Mrs. Barksdale into Mr. Barksdale.

"(g) But in this very deed of trust given by Barksdale the very day he bought the property at the foreclosure sale under all of these suggestive facts we find Barksdale describing himself as a 'widower.' Surely this was sufficient to excite inquiry and give notice that Mrs. Barksdale was dead.

"(h) And again in the deed of trust made by Barksdale to Roane, trustee, for Hearn & Co., a short time afterwards, dated April 25, 1898, for five thousand, five hundred dollars, very likely made to correct error in the deed of trust of March 15, 1898, Barksdale is described as a 'widower.' "

The two deeds of trust executed by Barksdale to Hearn & Co. referred to by counsel for appellant in paragraphs (d), (e), (f), (g), and (h) do not appear in Herron's chain of title; consequently he is not charged, in this connection, with constructive notice of the recitals therein. 23 Amer. & Eng. Encl. of Law (2d Ed.), p. 510.

That Herron had actual knowledge of the deed of trust from Mrs. Barksdale to Hearn & Co., to which fact reference is also made by counsel, imposed upon him no duty of inquiring into the state of the title other than that with which he was charged by reason of the deed of trust being of record.

The other matters referred to by counsel are not, in our judgment, sufficient to have put Herron upon inquiry. We must hold, therefore, that he was a purchaser for value without notice of appellant's claim to an interest in the land.

Assuming for the sake of the argument that appellant's contention that a *bona fide* purchaser for value without notice is protected only against the holder of a secret equity, nevertheless Herron acquired a perfect title to the land because of his purchase from Barksdale. Where one cotenant purchases an outstanding superior title to the common property, he acquires thereby the legal title to the whole of it, but holds such title in trust for the benefit of those of his cotenants who may wish to avail themselves of it by contributing or offering to contribute their proportion of the purchase money. Freeman on Cotenancy (2d Ed.), secs. 154—156; *Smith* v. *McWhorter*, 74 Miss. 400, 20 So. 870; *Dickerson* v. *Weeks*, 106 Miss. 804, 64 So. 731. Which right, as between him and his cotenants, will not be barred by mere lapse of time, but only when the delay to assert it is accompanied by circumstances which give rise to an estopped. *Dickerson* v. *Weeks*, *supra; Watson* v. *Vinson*, 108 Miss. 600, 67 So. 61. Herron, therefore, by his purchase from Barksdale,

acquired the legal title to the land, and since he was without notice, actual or constructive, that it was held by Barksdale in trust for the benefit of appellant, he acquired it discharged of such trust. *Clark* v. *Rainey,* 72 Miss. 151, 16 So. 499; *Atkinson* v. *Greaves,* 70 Miss. 42, 11 So. 688; *Conn.* v. *Boutwell,* 101 Miss. 353, 58 So. 105; 1 Perry on Trusts (6th Ed.), sec. 218.

*Dickerson* v. *Weeks* and *Watson* v. *Vinson, supra,* are not in conflict herewith; for the *bona fide* purchaser for value without notice rule was not involved in either of those cases. In *Dickerson* v. *Weeks* the purchaser of the legal title from the cotenant who purchased an outstanding superior title to the common property had actual knowledge at the time of his purchase of the rights of the other cotenants. In *Watson* v. *Vinson,* an examination of the original record and briefs of counsel will disclose that the subsequent incumbrancers defended not on the ground that they were without notice that Watson held the legal title to the land in trust for his cotenants, but on the ground that the right of these cotenants to avail themselves of Watson's purchase was barred because they had delayed doing so for an unreasonable length of time.

That appellant was an infant at the time the land was purchased by his cotenant at the trustee's sale is immaterial, for the reason that:

"Infants holding an equity in land, when the legal title thereto is acquired by an innocent purchaser, are in no better condition than they would have been if they were adults." 22 Cyc. 528; *Conn* v. *Boutwell,* 101 Miss. 359, 58 So. 105; *Clark* v. *Rainey,* 72 Miss. 151, 16 So. 499.

Since Herron purchased the land for value without notice of appellant's claim to an interest therein, he acquired the complete *jus disponendi* thereof; consequently the question of notice *vel non* by Herron's vendees and the persons to whom he and they have executed deeds of trust of appellant's claim is immaterial,

and in stating the case we have omitted the facts and agreement of counsel relative thereto. 2 Pom. (3d Ed.), sec. 754; *Atkinson* v. *Greaves,* 70 Miss. 42, 11 So. 688.

The decree of the court below is affirmed on the direct appeal, but on the cross-appeal is reversed, and the bill dismissed.

*Reversed on cross-appeal, and dismissed.*