FEDERAL LAND BANK OF NEW ORLEANS *et al. v.* MCCRANEY
*et al.*

(Division B. Oct. 22, 1934.)

[157 So. 248. No. 31382.]

**O. M. Oates**, of Bay Springs, and **J. Madison Travis**, of Meridian, for appellants.

Holt Montgomery, of Laurel, for appellees.

Argued orally by **J. M. Travis**, for appellant.

**Anderson, J.,** delivered the opinion of the court.

Appellees, the seven children of Travis McCraney and his wife, Mrs. Mamie D. McCraney, filed their bill in the chancery court of Jasper county against the appellants, the Federal Land Bank of New Orleans, Barrett Jones, trustee, and K. F. Huddleston, to establish title to, and recover possession of seven sixteenths undivided interests in one hundred forty acres of land in that county, which they claim by inheritance from their father. Appellant, the Federal Land Bank, answered the bill denying its material allegations, and embodied in its answer a demurrer raising the question of its legal sufficiency. The demurrer was overruled, and the cause tried on bill, answer, and proofs, resulting in a final decree in favor of appellees. From that decree appellants prosecute this appeal.

In 1904 Travis McCraney and his wife, Mrs. Mamie Mc-Craney purchased the land involved from W. E. Jones, and received a conveyance from him to both of them. They continued to own the land until the death of Travis McCraney, which occurred in 1911 or the early part of 1912. On the 15th of October, 1910, they executed a deed of trust on the land to W. R. Morgan, trustee, to secure a joint indebtedness they owed Abney & Travis, a mercantile firm. Default was made in the payment of this indebtedness. After such default, Travis McCraney died intestate. On July 1, 1912, this deed of trust was foreclosed by a substituted trustee and purchased by S. W.

Abney, a member of the firm of Abney & Travis. The purchase price paid by him was five hundred twenty dollars. The trustee made the proper conveyance to S. W. Abney, and on the next day thereafter S. W. Abney, in consideration of five hundred twenty dollars, cash paid, conveyed the land to Mrs. Mamie D. McCraney.

Appellees base their case on two grounds: First, that by their mother's purchase from Abney she did not get absolute title to the one-half undivided interest in the land owned by her husband; that although she got the legal title it was cumbered with a trust in their favor as to seven sixteenths interests, because at the time she purchased she was a cotenant with them in the husband's and father's undivided one-half interest, therefore she occupied a relation of trust toward them, and under the law seven sixteenths interests in the land inured to their benefit as cotenants. Second, that the foreclosure sale was void, and therefore Abney acquired no title at such sale to Travis McCraney's interest in the land, and for that reason he could not and did not convey such interest to appellees' mother; that it was void because the substitution of the trustee who conducted the foreclosure sale was void. We will consider those questions in the order stated.

First. Appellant Federal Land Bank contends that it was a bona fide incumbrancer of the land without notice that appellees had any rights therein; that whatever rights appellees had, if any, were not revealed in the chain of title on record. While appellees contend that there was sufficient on the record to put the bank on notice and inquiry which, if followed up, would have led to the knowledge that Mrs. McCraney did not own the absolute title to her husband's one-half interest in the land but held seven-sixteenths of it in trust for appellees. The record of the title showed that Mrs. McCraney was the wife of Travis McCraney, and therefore

after his death his one-half interest in the land descended to her and her seven children as cotenants. Those are the principal facts appellees rely on as suggesting inquiry by appellant.

Barksdale v. Learnard, 112 Miss. 861, 73 So. 736, 737, is controlling in favor of appellants. In that case Mrs. Barksdale owned the land involved. She and her husband, H. C. Barksdale, gave a deed of trust on the land to Hearn & Company to secure their joint indebtedness of three thousand three hundred thirty-six dollars and fifty cents and advancements thereafter to be made by Hearn & Company. Mrs. Barksdale died leaving as her sole heirs her husband and her son four years old. After her death her husband executed another deed of trust to Hearn & Company on "all the interest of the party of the first part" in the land described in the former deed of trust. Later the deed of trust executed by Barksdale and his wife to Hearn & Company was foreclosed, and the land bought in by Barksdale for the sum of four thousand nine hundred fifty dollars. The deed executed by the trustee to him acknowledged payment of that sum, but the evidence showed that no money was in fact paid by Barksdale, that the amount of his bid was credited by Hearn & Company on his and his wife's notes. Barksdale then executed a new note payable to Hearn & Company for the sum of five thousand five hundred dollars, and gave a deed of trust on the land involved to secure the same. Then he executed still another deed of trust to correct an error in the one last above referred to. It is true that in none of these deeds of trust was the fact directly revealed that H. C. Barksdale was the husband of Mrs. Barksdale, but in the last two deeds of trust executed by him to Hearn & Company after the death of his wife, he was described as "widower." The son of Mr. and Mrs. Barksdale brought suit for the land against Learnard and others, who

claimed title through Barksdale's purchase at the foreclosure sale. The son claimed that on account of his father and himself being cotenants in the land, his father by the purchase took the title in trust as to his one-half interest. On the other hand, Learnard and others contended that they were bona fide purchasers of the land for value without notice of any such equity. The first purchaser from Barksdale after he purchased at the foreclosure sale was one Herron; Learnard and others were subsequent vendees. The court held that Herron acquired perfect title to the land through his purchase from Barksdale, which title was transmitted to the subsequent vendees. The court recognized the doctrine that where a cotenant purchases an outstanding superior title to the common property he acquires thereby the legal title to the whole of it, but holds such title in trust for the benefit of those of his cotenants who may wish to avail themselves of it by contributing or offering to contribute their proportion of the purchase money; however, the court held that such doctrine had no application in that case, because Herron, by the purchase from Barksdale, acquired the legal title to the land, and since he was without notice, actual or constructive, that it was held by Barksdale in trust for the benefit of young Barksdale, he acquired it discharged of the trust. Citing, Clark v. Rainey, 72 Miss. 151, 16 So. 499; Atkinson v. Greaves, 70 Miss. 42, 11 So. 688; Conn v. Boutwell, 101 Miss. 353, 58 So. 105; 1 Perry on Trusts (6 Ed.), sec. 218.

In the Barksdale Case the cotenant bought at the foreclosure sale, while in this case Abney bought at the foreclosure sale. He occupied no such relation. It is true that the purchase price paid by Abney at the foreclosure sale was five hundred twenty dollars, and on the next day thereafter he sold and conveyed the land to Mrs. McCraney for exactly the same price. In the Barksdale

Case, on the same date of the trustee's deed to Barksdale the latter gave a deed of trust to Hearn & Company to secure his indebtedness of five thousand five hundred dollars, which the son contended "was merely a paper transaction—an effort to get the legal title out of Mrs. Barksdale into Mr. Barksdale." The court further held in the Barksdale Case that it was immaterial that the son was an infant at the time the land was purchased by his father, his cotenant, at the trustee's sale, for the reason that infants holding an equity in land, when the legal title thereto is acquired by an innocent purchaser, are in no better condition than they would have been if they were adults. Citing authorities; among them Conn v. Boutwell and Clark v. Rainey, supra.

There was no evidence to show that Abney purchased at the foreclosure sale for Mrs. McCraney, unless it be the fact that on the next day after his purchase he sold and conveyed the land to her in consideration of the same amount paid by him. The evidence shows without dispute that she paid Abney the purchase price out of her own funds, and not out of the funds of her husband's estate.

We hold that when Abney purchased the land at the foreclosure sale, the relation of cotenants between Mrs. McCraney and appellees was discharged so far as bona fide purchasers and encumbrancers were concerned. There was nothing in the chain of title indicating that Mr. and Mrs. McCraney had any children, and furthermore, after the long lapse of time between the foreclosure purchase and when appellants acquired their rights in the land, the latter had a right to assume that if McCraney and his wife had children they had declined to contribute their share of the purchase money and participate in the purchase by their mother.

Second. Was the substitution of Huddleston as trustee in the place of Morgan valid? There is some obscurity

in the record as to just how the substitution was made, but this was brought about by the destruction by fire of the deed and mortgage records of Jasper county. For that reason they were not available on trial. One of the attorneys for appellants, J. M. Travis, made an abstract of title for the Federal Land Bank at the time it made the loan to Mrs. McCraney. He kept a memorandum of the chain of title from which he made the abstract, and he testified on behalf of appellants, stating those facts, and in addition, with reference to the substitution of the trustee, that it was either pasted or written on the margin of the record where the deed of trust was recorded—he does not make it plain which, and we think it immaterial. The substitution was dated May 20, 1912, K. F. Huddleston was named as substituted trustee, the book and page where the deed was recorded was given (Book II, p. 124), the names of the mortgagor and the mortgagee in the deed of trust were set out, and at the bottom this appeared: "This appointment filed May 23, 1912 and recorded on the margin of page 124 of the record Book II same day. This May 23, 1912, T. Q. Brame, Clerk, C. C. Street, D. C."

Section 2168, Code of 1930, is in this language: "Sales of land made under deeds of trust by substituted trustees shall not convey the interest of the grantor or grantors therein, but shall be absolutely null and void, both at law and in equity, unless the substitution shall appear of record in the office of the chancery clerk of the county where the land is situated, and unless it shall so appear by being actually spread at large upon the record before the first advertisement or notice of sale shall have been posted or published; the filing for record or lodging with the clerk not being sufficient. Such substitution, however, may so appear by a separate instrument recorded as above set out in all respects, or a copy of such substitution may be recorded as above set out."

This substitution took place and was put of record before the first notice of sale was posted or published. We think it substantially complied with the statute. King v. Jones, 121 Miss. 319, 83 So. 531; Watkins v. McDonald (Miss.), 41 So. 376.

Reversed and remanded.