BLACKWELL, et al. *v.* HUNT OIL Co., et al.

May 25, 1953

No. 38789        33 Adv. S. 1        64 So. 2d 901

*Craig Castle* and *Will H. Watkins, Jr.,* for appellants.

*Jones & Stratton* and *Armstrong & Hoffman,* for appellees.

LEE, J.

Royalty and mineral interests in 100 acres of land were involved in this suit.  Cobert C. Blackwell filed his

bill against Hunt Oil Company, a corporation, and others, for an adjudication of such interests so as to confirm in him either a 17/18ths or an 8/9ths interest. The answer denied all material allegations. The court granted Mrs. Luvesta Blackwell's petition to intervene, and she adopted the allegations of the original bill. At the conclusion of the trial, the court dismissed the bill, and the Blackwells appealed.

O. L. Blackwell owned 312 acres of land in Walthall County. On August 9, 1926, he executed to the Bank at Tylertown a deed of trust which covered 272 acres. On March 6, 1931, he executed to D. E. Lampton and Company another deed of trust, which covered all of his land, and was second to the Bank's. In each of these conveyances, he was joined by his wife, Mrs. Luvesta Blackwell. On May 5, 1931, Blackwell died, leaving his widow and 8 children, whose ages varied from 17 years to 7 months. His aggregate debt was about $7,000.00. No profit was realized from that year's crop.

The widow collected between $3,000.00 and $4,000.00 as proceeds from an insurance policy on her husband's life. She realized her inability to liquidate the debt against this property, and she therefore entered into negotiations with D. E. Lampton and Company for the purpose of working out a plan whereby she could obtain the 100 acres of land here involved and pay for the same out of her insurance money. In consummation of this plan, D. E. Lampton and Company commenced foreclosure proceedings. At this juncture, on November 23, 1931, the Bank filed its bill to enjoin the foreclosure and for other purposes. Mrs. Blackwell and her children were named defendants; and the statutory notice of the suit was filed and recorded in the lis pendens record. D. E. Lampton and Company, as trustee, became the purchaser at the foreclosure sale on December 21, 1931; and on December 30th thereafter, the trustee and the Bank conveyed the land to D. E. Lampton and Company. On the next day, the Company, for a consideration

of $3,100.00, conveyed it to Mrs. Luvesta Blackwell, and her deed was recorded January 1, 1932. On the same day, the Bank's suit was withdrawn and such disposition was noted on the lis pendens record. Mrs. Blackwell and her children continued to live on the land.

On March 7, 1934, Mrs. Blackwell executed a mineral lease thereon to Homer P. Lee. On August 3, 1939, she executed to L. E. Cushman, trustee, a deed to one-half of the minerals. The purchaser, before payment, obtained an attorney's opinion that Mrs. Blackwell was vested with title. Thereafter, on November 2, 1944, she executed to W. S. Notestine a mineral lease for an undivided half interest in the land.

Mrs. Blackwell granted 3 agricultural leases to her son, Cobert C. Blackwell, during the period from 1947-1949; and finally she executed a deed to him, in which she reserved a life estate. When an abstract of Cobert's title was made, preparatory to obtaining a loan from the Federal Land Bank of New Orleans, some question as to its sufficiency arose on account of a possible trust relation to the children, growing out of Mrs. Blackwell's original purchase. All of the children, except one, were of age, and they executed quitclaim deeds to their brother. The minor did so after the removal of her disability of minority.

The minor, of the age of 17 years, her mother and two adult sisters petitioned the chancery court to remove her disability so that she could likewise execute a quitclaim deed to Cobert for a consideration of $1.00. The petition advised the court of the original foreclosure and Mrs. Blackwell's subsequent purchase, and alleged that Mrs. Blackwell, at the time, intended to purchase the land for herself individually, with her own funds and that at all times since, she, the other petitioners, and all of her children "considered the lands . . . as being the sole and exclusive property and estate of Mrs. O. L. Blackwell . . . and only recently has the question arisen as to the validity of the title of Cobert C. Blackwell

. . . and the said Cobert C. Blackwell has been advised by attorneys that his title thereto is questionable . . .," on account of a trust relation of the mother to her children. The decree granted the relief as prayed for. Cobert employed the lawyer for this purpose, paid him, was fully aware of the purpose, was present at the hearing, and paid the costs.

The deed of trust of Cobert C. Blackwell and Mrs. O. L. Blackwell to the Federal Land Bank, dated October 10, 1949, was made "subject, however, to" the three prior conveyances of oil, gas and minerals.

The legal principles stated in Barksdale v. Learnard, 112 Miss. 861, 73 So. 736, re-examined and reaffirmed in Federal Land Bank of New Orleans v. McCraney, 171 Miss. 191, 157 So. 248, and again re-examined and reaffirmed in Boyd v. Entrekin, 209 Miss. 51, 45 So. 2d 848, are the principles applicable here.

It is now settled, from these cases, beyond peradventure, ■■ ■ that one, who purchases land in good faith, for a valuable consideration, without actual or constructive notice of equitable claims of others, acquires a perfect title from his vendor, who previously purchased the same at a valid foreclosure sale.

George R. Mitchell, who purchased the interest for Cushman, trustee, testified that he bought it on the representation of Mrs. Blackwell that she was the owner; and that he paid the top price, after obtaining an attorney's certificate. Mrs. Blackwell's version was that Mitchell did not ask her about the state of the title. However, according to her allegations in the petition to remove the disability of minority, she represented that she and all of her children had considered this land as her's alone, until the question arose on account of the proposed loan from the Federal Land Bank. Mitchell, while admitting that he saw some children around the home at the time of making the purchase from Mrs. Blackwell, had no knowledge that the children had an interest therein. Just as in Federal Land Bank v. Mc-

Craney, supra, there was nothing in the chain of title to indicate that Mr. and Mrs. Blackwell had children.

While there was nothing of record to indicate that Mrs. Blackwell held the land, or any interest therein, as trustee, the appellants contend that the notice in the lis pendens record in the Bank's suit was sufficient to put the appellees on inquiry.

Of course the object of lis pendens is to preserve the status quo pending the outcome of the litigation. ". . . the authorities agree that whoever purchases or acquires an interest in property that is involved in pending litigation stands in the same position as his vendor, whether he purchased for a valuable consideration or not, and takes it subject to any judgment or decree that may be rendered." 34 Am. Jur., Lis Pendens, Sec. 2, page 361.

However, the suit on which this lis pendens notice was given, was withdrawn. "Generally the lis pendens is terminated and the person acquiring interests before abandonment or dismissal does not acquire his rights pendente lite so as to be affected thereby if an action or suit is abandoned or dismissed either voluntarily or involuntarily." 54 C. J. S., Lis Pendens, Sec. 30, page 598. See also note thereunder where it was held that an "attorney who made search on behalf of prospective mortgagee was not obliged to take notice of lis pendens which fell with dismissal of case on which the lis pendens was predicated. Centreville Building & Loan Ass'n. v. Gollin, 176 A. 356, 117 N. J. Eq. 412." 54 C. J. S., Lis Pendens, page 599.

It is also contended that the children were all minors at the time of the purchase by their mother, and some of them were still minors at the time of her conveyance of mineral interests. However, in Barksdale v. Learnard, supra, this Court observed that such a fact was immaterial and said: "Infants holding an equity in land, when the legal title thereto is acquired by an innocent purchaser, are in no better condition than they would have been if they were adults," citing authorities. The

opinion also said: ''Herron, therefore, by his purchase from Barksdale, acquired the legal title to the land, and since he was without notice, actual or constructive, that it was held by Barksdale in trust for the benefit of appellant, he acquired it discharged of such trust.''

It is further argued that, since the title had previously been vested in O. L. Blackwell, and his wife signed the deeds of trust only because they affected the homestead, and when she subsequently purchased the same, and later executed the mineral conveyances as a widow, such facts and circumstances were sufficient to give the appellees constructive notice of the potential claim of the Blackwell children. The same argument was advanced by the appellant in Barksdale v. Learnard, supra, but was rejected by the court.

Since the decree of the lower court was correct on the ground above stated, it is unnecessary to deal with appellees' further contentions, namely, that appellants are estopped by reason of their position in the disability of minority proceedings, and that they ratified the outstanding conveyances in their deed of trust to the Federal Land Bank.

It follows, therefore, that the learned chancellor was fully warranted in denying the relief prayed for and in dismissing the bill. Hence the decree appealed from ought to be, and is, affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Arrington* and *Ethridge, JJ.,* concur.