DAN M. LEE, Justice,
for the Court:
This is an appeal from the Chancery Court of DeSoto County. The appellants filed their complaint on May 15, 1980, seeking damages against the Bridgetown Community Association.
On May 21, 1981, the complaint was amended to include an allegation showing that the Association’s agreement to amend protective covenants was recorded improperly. On September 14, 1981, the appellants and the appellees jointly filed stipulations for determination of threshhold issues of liability. Based upon these stipulations, the pleadings, and the supporting briefs filed by the parties, the court issued its opinion on April 19, 1984. In that opinion, the court dismissed the complaint with prejudice.
Glen Edwards and James H. Flaherty, the appellants here and the plaintiffs below, have appealed, and assign the following as error:
1. The Court erred in concluding that Edwards and Flaherty are required to be members of a homeowners association and that the owners and their lots are liable for dues and assessments made against them by the homeowners association because: neither dues or assessments nor the homeowners’ association were provided for in the restrictive covenants existing in 1972 and 1973 when their lots were purchased; and because Edwards and Flaherty did not agree to the purported change in the covenants in 1975 providing for the homeowners association and suggesting dues or assessments or otherwise agree to become members of the homeowners association or to charge their lots for dues or assessments.
2. The Court erred in concluding that dues and assessments of a homeowners association established in 1975 were superior to purchase money mortgages given in 1972 and 1973, where no provisions for a homeowners association or dues or assessments against the lots existed in the restrictive covenants of the subdivision at the time the mortgages were given.
3. The Court erred in dismissing the bill of complaint with prejudice.
On July 19, 1972, James Flaherty bought a lot in Lakewood Estates, and Glen Edwards bought his lot on June 8, 1973. The lots were subject to 21 covenants, which had been recorded, and which Edwards and Flaherty had notice of. The 21st covenant read as follows:
These protective covenants may be amended by a written agreement duly executed by party or parties owning 65% of the land and property subject to the restrictions hereto set out at the time said amendment, modification or revocation is sought. These covenants are to run with the land and shall be binding on all parties and all persons claiming under *1237 them for a period of thirty years from the date these covenants are recorded, after which time said covenants shall be automatically extended for successive ten year periods unless an instrument signed by the owner or owners of the majority of the above described lots has been recorded in the public records agreeing to amend, modify or revoke said covenants in whole or in part.
Lakewood Subdivision, as the name implies, encompassed an area containing several lakes and common areas. The lot owners were also subject to the following covenants, Covenants No. 14 and 15:
14. All lakefront lots shall have riparian rights from the rear platted lot line to the lower water line of the lake or lakes.
15. The property owners in all sections of Lakewood Estates and their guests shall be entitled to the use and enjoyment of the lake or lakes and all other recreational facilities in all sections and/or areas of Lakewood Estates.
On September 17, 1973, Lakewood Estates Association was incorporated under the laws of the State of Mississippi, for the purpose of “Holding, owning, managing, improving and supervising common property of a residential property owners association.”
In July, 1975, Bridgetown, Inc., the successor of Lakewood Estates Association, filed an agreement to amend the protective covenants. This agreement was purportedly signed by sixty-five percent of the property owners of the subdivision. It contained extensive modifications and additions to the previous restrictive covenants, including, but not limited to: A provision requiring all record owners of property in the subdivision to be members; a provision granting to every member an easement to the common properties; a provision requiring maintenance assessments; a provision creating an architectural control committee, for the purpose of exterior maintenance of lots and houses, review of proposed construction on houses or lots, submission of plans for prevention of lake erosion, and approval of exterior color of houses; the addition of thirty-nine new use restrictions; and a provision providing for enforcement of the covenants in a proceeding either in law or equity.
On October 12, 1979, Bridgetown Community Association filed lis pendens notices in DeSoto County, Mississippi, against both of these homeowners. The notices describe the type of suit as a lien for enforcement of covenant for nonpayment of maintenance assessments, and state that “A suit will be filed for enforcement of the lien.”
On April 24, 1980, Flaherty and Edwards received notices from James McGehee and Co., their mortgage company, which stated that:
We have been advised that the Bridgetown Community Association, Inc. intends to file a foreclosure lien against you because of non-payment of the Bridgetown maintenance assessment, a total of $140.00.
We are writing to advise that non-payment of the assessment charges constitutes a breach of the deed of trust which secures your loan. We strongly urge you to pay this assessment immediately or it will be necessary that action be taken under the terms of the trust deed.
On April 29, 1980, Flaherty and Edwards paid Bridgetown Community Association $143.00 each, under protest. On May 15, 1980, the instant suit was filed against Bridgetown, seeking damages to compensate the appellants for the following alleged wrongful acts:
1. Forced payment of money not owed under duress.
2. Slander of title to their respective lots.
3. Personal defamation by libelous statements contained in the “LIS PEN-DENS NOTICE” and believed to be contained in the communications to James E. McGehee & Company, Inc.
4. Intentional interference with the mortgage contracts existing between Complainants and James E. McGehee & Company, Inc.
*1238 5. Intentional infliction of mental distress and denial of quiet enjoyment of their homes in Lakewood Estates Subdivision.
6. Deprivation of their rights under the Fifth Amendment rights under the United States Constitution in violation of 42 U.S.C.A. 1983 through wrongful utilization of Lis Pendens notices under color of state authority.
There is no indication in the record that Bridgetown Community Association has ever filed a suit for enforcement of the covenants.
The court dismissed the complaint, with prejudice. In its opinion, the court found: 1. the validity of the agreement to amend protective covenants had not been challenged and was not an issue for the court to determine; 2. that “although complainants were not parties to the agreement to amend protective covenants they took title to their property subject to the right of amendment and are therefore subject to the amendments;” 3. that the purchase money mortgages executed by Flaherty and Edwards were subject to the original covenants and any subsequent amendments; 4. that Bridgetown had the right to file lis pendens notices; 5. that the plaintiffs had failed to prove malice necessary for slander of title; and 6. that the benefit to the plaintiffs of the homeowners association outweighed any burden placed upon their lots.
We find that (1) recording of lis pendens notices without filing suit was improper and could amount to malicious slander of title; (2) the dues imposed by the Homeowners Association are not superior to Edwards’ and Flahertys’ purchase money mortgages. We therefore reverse the decision of the court below on these two issues alone and affirm as to all others.
PART I
Edwards and Flaherty assigned as the court’s first error its finding that they were required to be members of the homeowners association. They contended that, because the homeowners association was not a part of the original covenants, and because they were not parties to the amendment, they were not required to abide by the amendment which provided for the homeowners association. Bridgetown, on the other hand argued that the homeowners association created a benefit for all the lot owners, and that it furthered the general plan or scheme for the entire subdivision. Edwards and Flaherty countered that argument by asserting that the imposition of the extensive provisions recognized in the amendments constituted an additional burden upon their lots, that was not within the original plan or scheme of the subdivision. This assignment of error has no merit and is controlled by Alex Perry, William Carlock and John Nelson v. Bridgetown Community Assn., Inc., et al., 486 So.2d 1230 handed down this date.
PART II
Edwards’ and Flaherty’s second assignment of error alleges that the dues and assessments of the homeowners association were not superior to their purchase money mortgages. In Merchants and Farmers Bank v. Pool Brothers, 140 Miss. 799, 106 So. 627 (1926), the Court dealt with whether a bank’s deed of trust could be impaired by a subsequent contract. This Court held that, while the bank could waive its superi- or lien, “The bank, of course, had a right under its deed of trust to refuse to waive anything, and it would be beyond the power of Alford [the mortgagor] after executing the deed of trust to make any contract without the consent of the bank which would impair its security.” 140 Miss. at 807, 106 So. at 628. The appellees in this case assert that this was not a subsequent contract, but part of the prior recorded restrictive covenants.
In Mendrop v. Harrell, 233 Miss. 679, 103 So.2d 418 (1958), the Court dealt with the question of whether a restrictive covenant which was recorded in a deed created a lien upon the land. The Court held that the covenant was “a valid, affirmative covenant running with the land, by which the land is burdened with an obligation to *1239 pay_” 233 Miss. at 690, 103 So.2d at 423. The Court further held that this covenant created a lien on the land which was. superior to a subsequent deed of trust executed to a bank.
The question of the priority of the liens, then, depends upon construction of the original restrictive covenants. Since the assessment lien was created and recorded by modifications made after the deed of trust, then the bank’s lien was superior, and the bank had no authority to require payment by Edwards and Flaherty under their deeds of trust.
A related issue is whether the dues of the property association constitute “assessments” at all. The deed of trust executed by both Edwards and Flaherty stated that “He will pay all taxes, assessments, water rates, and other governmental or municipal charges, fines or imposi-tions_” In this context, the term “assessment” appears to indicate a local or municipal tax. In Macon v. Patty, 57 Miss. 378 (1879), the Court held that an assessment is “like a tax,, in that it is imposed under an authority derived from the legislature, and is an enforced contribution to the public welfare, and its payment may be enforced by the summary method allowed for the collection of taxes.” Id. at 386. Miss.Code Ann. § 21-41-1 (1972) authorizes special improvements when made by municipalities of the state. The cost of those improvements may be recovered “by levying and collecting special assessments as provided in this chapter, and may finance such local improvements in the manner provided in this chapter.” The Bridgetown Community Association is not a municipality of this state. Thus, the dues to the homeowners association were not an assessment such that the bank could act under its deed of trust in forcing payment.
PART III
The appellant’s third assignment of error asserts that the court erred in dismissing the bill of complaint with prejudice. Specifically, the appellants find error in the court’s determination that the appellants did not prove malice in order to prove slander of title. The court held in its opinion that the appellants “failed to plead or prove malice and in order to prove slander of title malice is required to be pled and shown by clear and convincing evidence.” The court further held that the homeowners association had the right to file lis pendens and prepare any suits for foreclosure by judicial sale.
In Smith County Oil Co. v. Jefcoat, 203 Miss. 404, 33 So.2d 629 (1948), the Court refused to find malice on the part of a defendant who “chose to rely upon its conveyance and what it conceived to be the law in regard to its rights in the premises.” 203 Miss. at 415, 33 So.2d at 633. Also, in Sellars v. Grant, 196 F.2d 677 (5th Cir.1952), the Court found that while the plaintiff was not entitled to prevail, “the suit was filed in good faith; that it was not actuated by malice; and that in keeping the lis pendens notice upon the records, Grant and his attorneys were acting in the exercise of reasonable care and sound judgment.” Id. at 680.
The appellants allege that Bridgetown’s actions were malicious in that it filed its lis pendens notice without ever filing suit. Miss.Code Ann. § 11-47-3 (1972) provides for lis pendens to be filed “[w]hen any person shall begin a suit in any court....” In this case, the notices stated that “A suit will be filed for enforcement of the lien.” [emphasis added] The notices were filed October 12, 1979. About six months later, on April 24, 1980, the appellants’ mortgage company notified them by letter that the Bridgetown Community Association “intends to file a foreclosure lien against you....” [emphasis added] The record does not state when, if ever, the action was commenced. As long ago as 1851, in the case of Bacon v. Gardner, 23 Miss. 60 (1851), this Court held that the issuance of a summons was necessary in order to constitute the lis pendens. In Blackwell v. Hunt Oil Co., 217 Miss. 686, 64 So.2d 901 (1953), this Court held that where a suit is voluntarily abandoned or dismissed, the lis pendens notice has no effect. The very *1240 definition of the term “lis pendens” is “pending suit,” and:
In order that the doctrine of lis pendens may apply, so that purchasers of property may be bound by the judgment or decree rendered, it is essential that there be in existence a pending action, suit, or proceeding, and there can be no lis pen-dens because of the fact that an action or suit is contemplated.
54 C.J.S. Lis pendens § 17 (1948).
It appears that the lis pendens notice was improperly filed. Thus, the issue of malice was properly before the court, and the chancellor erred in dismissing it. On remand, the appellants will have the opportunity to litigate this issue; however, they will be unable to recover a money judgment without a showing of actual damages resulting from the lis pendens notice.
We therefore hold that (1) that the court erred in concluding that dues and association of Homeowners Associations in 1975 were superior to purchase money notices given in 1972 and 1973; (2) that the improper recording of the lis pendens notice without filing suit could amount to malicious slander of title. Therefore, the court erred in dismissing the bill of complaint thereas-to.
We therefore reverse the trial court and remand this case for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.