OWEN *v.* POTTS *et al.*\*

(In Banc.    Jan. 23, 1928.)

[115 So. 336.    No. 26850.]

1. VENDOR AND PURCHASER. *Conveyance is not good against purchaser
   for valuable consideration without notice, unless acknowledged
   or proven, and lodged with clerk to be recorded; deed not lodged
   with clerk to be recorded is void as to subsequent purchaser
   without notice, even though holder has it filed after subsequent
   conveyance is executed (Hemingway's Code 1917, sections 2288,
   2292).*

   Under section 2288, Hemingway's 1917 Code (section 2484, Code
   of 1906), a conveyance is not good against a purchaser for
   valuable consideration without notice, unless it is acknowledged
   or proven, and lodged with the clerk to be recorded. A deed not
   so filed for record is void as to a subsequent purchaser for value
   without notice, even though the holder of such unrecorded deed
   has it filed after the subsequent conveyance is executed. *Craig
   v. Osborn*, 134 Miss. 323, 98 So. 598, cited.

2. DEEDS. *Vendor and purchaser. Quitclaim deed in chain of title
   does not deprive person claiming thereunder of character of
   bona-fide purchaser; there is no distinction between quitclaim
   and warranty deeds, as affecting holder with notice, or putting
   him on inquiry; quitclaim deed is as effectual to convey title as
   deed of general warranty.*

   A quitclaim deed in the chain of title does not deprive a person
   who claims under it of the character of a *bona-fide* purchaser.
   There is no distinction between quitclaim and warranty deeds,
   as affecting a holder with notice, or of putting him on inquiry.
   A quitclaim deed is as effectual to convey title as deeds of gen-
   eral warranty, citing *Chapman v. Sims*, 53 Miss. 154.

3. MORTGAGES. *Grantee in quitclaim deed from grantor in deed of
   trust with warranty of title securing bona-fide debt may have
   deed of trust foreclosed unless quitclaim deed was given in full
   satisfaction thereof.*

Where a person takes a deed of trust upon property with warranty of title to secure the *bona-fide* debt, and afterwards procures a quitclaim deed from the grantor, this does not preclude the grantee from having the deed of trust foreclosed unless the quitclaim deed was given in full satisfaction of the deed of trust.

*Corpus Juris-Cyc. References:    Deeds, 18CJ, p. 313, n. 36; Mortgages, 41CJ, p. 790, n. 25 New; Vendor and Purchaser, 39Cyc, p. 1696, n. 78; p. 1741, n. 71; On effect of a quitclaim deed in an otherwise perfect title see annotation in 29 L. R. A. 33; 12 L. R. A. (N. S.) 240; 26 L. R. A. (N. S.) 159; 27 R. C. L. 732; 3 R. C. L. Supp. 1519.

APPEAL from chancery court of Benton county.

HON. N. R. SLEDGE, Chancellor.

Suit by F. A. Owen against Dean H. Potts, and others to cancel deeds as clouds on title, in which the Carr-Lowry Lumber Company and other defendants filed a cross-bill asking cancellation of the complainant's claim as against their title. Defendants Potts and Baxter did not answer, and no decree was taken against them. From a judgment dismissing the complaint and canceling complainant's claim to the land, complainant appeals. Affirmed.

*Wall Doxey* and *Hindman Doxey,* for appellant.

*Chas. Lee Crum,* for appellees.

Argued orally by *Wall Doxey,* for appellant.

ETHRIDGE, J., delivered the opinion of the court.

F. A. Owen, the appellant, was complainant in the court below, and filed a bill to cancel certain deeds as clouds upon his title to certain lands described in the bill. The defendants Carr-Lowry Lumber Company, R. F. Carr, and R. B. Marshall, answered the bill and filed a cross-bill setting up that they were *bona-fide* purchasers for value without notice of Owen's title, and that

their purchases were without notice of Owen's claim, and prayed for a cancellation of Owen's claim as against their title.

The case was tried upon an agreed statement of facts between the defendants answering and the complainant. The defendant Potts was a nonresident, as was also the defendant Baxter. They did not appear and answer, and no decree was taken against them.

By the agreed statement of facts it appears that D. H. Potts was the owner in fee simple of the land described in the complainant's bill on the 15th day of May, 1920, and that on that day he signed and delivered a warranty deed to the complainant, F. A. Owen, conveying his title in fee simple to the said land; that F. A. Owen had never executed a deed or conveyed title to any one to the said two hundred and forty acres of land described in the bill, and that he (Owen) had, since 1920, paid all taxes due and assessed against said land; that a deed purporting to have been executed by F. A. Owen to Jas. E. Baxter, conveying fee-simple title to the said Baxter, and recorded on October 6, 1921, in the record books of said county, was a forgery; that on October 24, 1921, Dean H. Potts executed to James E. Baxter a quitclaim deed to the said land, which deed was duly recorded in the chancery clerk's office of the county on October 25, 1921; that on the 24th day of October, 1921, Jas. E. Baxter executed to A. H. Fuller a deed conveying said land, which deed was recorded on October 25, 1921; that on October 26, 1921, a deed of trust from A. H. Fuller to R. B. Haberling was recorded in the chancery clerk's office of said county, conveying said land, in trust, to secure an indebtedness therein mentioned; that, subsequently, on the 3d day of January, 1922, a quitclaim deed was executed by Fuller to Haberling, which deed was placed on record in the said county on January 6, 1922; that Fred B. Smith, trustee in the said deed of trust from Fuller to Haberling, sold the land under the deed of trust for valuable consideration and in good faith on

the part of the trustee and the purchaser, and that at said sale on the 10th day of November, 1922, R. F. Carr and Lewis Thompson became the purchasers of the said land, and the deed to them was filed for record on the 13th day of April, 1923; that R. F. Carr and Lewis Thompson conveyed said land to the Carr-Lowry Lumber Company on the 11th day of April, 1923, and the deed to them was filed for record in the deed records of the county, and was recorded on April 13, 1923; that Carr-Lowry Lumber Company, on the 21st day of December, 1925, made a deed to this land to R. B. Marshall, which deed was filed for record on the 4th day of January, 1926; that on the same day R. B. Marshall conveyed said land to R. F. Carr by deed of trust to secure the purchase price thereof, which deed of trust was recorded on the 4th day of January, 1926.

It was further agreed that R. F. Carr and Lewis Thompson and Carr-Lowry Lumber Company and R. B. Marshall were all purchasers of the said land without actual, but with such record and constructive, notice as the public records may show of F. A. Owen's claim or any fraud having been perpetrated on him, and in good faith for valuable consideration; that immediately prior to the trustee's sale at which the said Carr and Thompson purchased the land, R. F. Carr went in person upon the land with the view of ascertaining its value and situation, and found no person living upon the land, or in its actual possession or occupancy; that it was what is known as unoccupied or wild land at that time; and that on purchasing the land at said trustee's sale he had no notice of the claim of Mr. Owen to the land.

It was further agreed that F. A. Owen was a resident of Tunica county, Miss., living at Evansville, and had lived there from the time said land was deeded to him, and that occasionally he would go up and look over the land; that although the said land was unoccupied he had some of the natives look after it and see that no one was cutting the timber on it; that in the summer of 1925 he

negotiated a sale of the said land to one Dr. J. M. Bynum, and that the price to be paid for the said land was agreed upon; that the complainant, F. A. Owen, agreed to give a deed to the said land showing a clear title thereto; that thereupon complainant employed an attorney in the said county to write the deed in compliance with his agreement with the said Dr. Bynum, to-wit, to furnish a clear title to the land; that shortly thereafter the complainant, Owen, was notified by the said attorney that upon investigating the records of Benton county he found the various deeds recorded, as shown by the pleadings in this cause; that for the first time the complainant had knowledge or was advised that any one was claiming title to the said land; and that immediately thereafter he filed his bill.

It was further agreed that R. F. Carr also had a person selected to see after this land from time to time, as he deemed necessary, and to advise him of any timber being cut thereon, and that it had recently come to the attention of the parties to this agreement that J. M. Bynum had cut and removed a large part, or all, of the timber from this land without the knowledge and consent of R. F. Carr or R. B. Marshall.

The court dismissed the bill of complaint filed by Owen, but rendered the relief prayed for in the cross-bill, and canceled the claim of Owen to the said land.

It appears that Owen bought the land from Potts on the 15th day of May, 1920, securing a warranty deed thereto, but that he did not record his deed until the 12th day of December, 1923; that between the date of the deed from Potts to Owen and the date it was placed for record, a forged deed purporting to convey the title from Owen to Baxter was recorded; that within the period between the date of the said deed and its record Potts executed a quitclaim deed to Baxter, and that Baxter conveyed the land to A. H. Fuller, who placed his deed for record; that Fuller borrowed one thousand dollars from Haberling on this land, and executed a quitclaim

deed to Haberling thereto; that notwithstanding the quitclaim deed, Haberling caused the deed of trust to be foreclosed. This deed of trust warranted the title to the land to Haberling. At the foreclosure sale the land brought one thousand one hundred dollars, and was purchased by Carr and Thompson without any actual knowledge of the fact that Owen had title to the land, or that the deed from Owen to Baxter was a forgery.

As the record appeared when these defendants, who answered, purchased, the title to the land had not passed from Potts to Owen. As Potts was apparently the owner of the land, and as the deed appeared to be regular, we think the case is controlled by *Craig* v. *Osborn,* 134 Miss. 323, 98 So. 598. It was held in that case that, by the terms of section 2288, Hemingway's Code 1917 (section 2784, Code of 1906), a conveyance shall not be good against a purchaser for valuable consideration without notice, or any creditor, unless it is acknowledged or proven, and lodged with the clerk to be recorded. A deed not filed for record is void as to a subsequent purchaser or creditor for value without notice, even though the holder of such unrecorded deed has it filed after the subsequent conveyance is executed and before it is recorded. Under section 2292, Hemingway's Code 1917 (section 2788, Code of 1906), the instrument takes effect, as to subsequent purchasers and creditors for value without notice, only from the time when delivered to be recorded, and does not relate back to its date in being filed, so far as subsequent purchasers and creditors for value are concerned. The statute does not give preference in the order of filing, and as to such subsequent purchasers or creditors it is not material whether the subsequent deed or lien be filed or recorded or not.

The legislature, in 1924 (chapter 239), amended this section so as to change the rule laid down in *Craig* v. *Osborn;* but the transaction here involved took place prior to the passage of that statute, and is therefore not

affected by its passage. Therefore the case of *Craig* v. *Osborn, supra,* controls the rights of the parties here.

The fact that the title of the appellees was derived through the quitclaim deed from Potts to Baxter does not prevent the appellees from being purchasers for value in good faith.

In *Chapman* v. *Sims,* 53 Miss. 154, this court held that: "A quitclaim deed in a chain of title does not deprive [a person] who claims under it of the character of a *bona-fide* purchaser."

And that: "There is no distinction between a quitclaim and a warranty deed, as affecting a holder with notice, or putting him on inquiry."

It further held that: "A quitclaim deed is as effectual to convey title as one with general warranty."

We do not think the fact that Fuller, after giving his deed of trust to Haberling, executed a quitclaim deed to Haberling, deprived Haberling of the right to foreclose through his trust deed, and thus get the benefit of the warranty contained in the deed of trust from Fuller to Haberling. It is clear that the appellees who answered and defended the suit were purchasers in good faith without notice within the purview of the statutes of the state, and under the authority of *Craig* v. *Osborn, supra.* It was agreed that there was no actual notice of Owen's rights or claims, and, that being true, appellees had a right to rely upon the records existing as speaking the truth, at least, with the exception of the forged deed from Owen to Baxter. We think it is clear that the appellees had no actual knowledge of the forgery of such a deed, and that they had a right to rely upon the title as shown by the record. There being nothing on the face of the record to charge them with notice of any infirmity in the title to the land here involved, it follows that the judgment of the court below must be affirmed.

*Affirmed.*

PACK, J., took no part in this decision.