## LAY *v.* NUTT.

(Division B.   Jan. 18, 1943.   Suggestion of Error Overruled Feb. 15, 1943.)

[11 So. (2d) 430.   No. 35204.]

84

**A. M. Warwick** and **Harold W. Davidson,** both of Carthage, for appellant.

**O. H. Barnett, Jr.**, of Carthage, for appellee.

Argued orally by **A. M. Warwick**, for appellant, and by **O. H. Barnett, Jr.**, for appellee.

**Alexander, J.**, delivered the opinion of the court.

Complainant, Nutt, filed his bill to cancel, as a cloud upon his title to certain lands, the deed thereto of appellant and to enjoin certain acts of dominion exercised by the latter. The land involved is the N.W.¼ of S.E.¼, Section 11, Township 9 North, Range 6 East, Leake County. In 1932, the record owner thereof was one Boyd who executed a deed to Nutt on April 6, 1932. The deed was withheld from record until after a second deed from Boyd to Chipley executed and recorded exactly five years later. On May 9, 1940, Chipley deeded the lands to Lay. If such were the complete factual situation, the right of Lay would of course be superior. However, to avoid the effect of our registry laws Nutt contends (1) that Lay was not a bona fide purchaser from Chipley, and (2) that Chipley took his deed with actual or constructive knowledge of the change in ownership from Boyd to Nutt.

We need examine only the second proposition for if Chipley was a bona fide purchaser, the status of Lay as Chipley's grantee would be immaterial. Lusk v. McNamer, 24 Miss. 58; Equitable Securities Company v. Sheppard, 78 Miss. 217, 28 So. 842; Barksdale v. Learnard, 112 Miss. 861, 73 So. 736.

No actual notice to Chipley was shown. His mala fides must be shown, if at all, by circumstances which would reasonably put him upon notice or inquiry and which would be reasonably calculated to disclose the true state of the title. In 1932, when Boyd executed the deed to Nutt, the grantor was living upon and cultivating the land. The grantor remained thereon during the subsequent years up to and including the year 1940. In 1934, Boyd executed a crop mortgage covering this land, but this was not recorded. In 1936, the year prior to the deed to Chipley, one Warner Stewart, a stepson of Boyd, who lived about a quarter of a mile from grantor, cultivated part of this land. Nutt testified that Boyd remained upon the land with his permission but as his tenant and worked some of the land; that the assessment of the land remained in the name of Boyd who paid the taxes thereon up to 1936; that in 1936, the property was worked by Stewart as the tenant of Nutt. This last allegation is denied by Stewart who testified: "I don't know who I rented it from, but I carried some rent corn and carried it to Mr. John and he told me to take it to Mr. Nutt." During this year the land was cultivated jointly by Stewart and L. J. Boyd, grantor's grandson, who lived with John Boyd and his wife. During the period between the execution of the two deeds there was only one dwelling house on the land and that was occupied by grantor. Stewart testified that he did not rent from Nutt in 1937 but from Boyd the year in which Boyd executed his deed to Chipley. Chipley knew the grantor, Boyd, his grandson, and Stewart, the stepson. No one other than these cultivated the land prior to the

deed to Chipley. Its manner of operation thereafter is not relevant. Where a grantor who is the record owner of land remains in possession and his deed to grantee is withheld from record, a subsequent purchaser is not charged with notice nor put upon inquiry as to the true situation. Appellee's case therefore must be grounded, if at all, upon such constructive notice as is predicable of the tillage of the lands during 1936 by Stewart. The trial court so construed the situation. As adverted to, Stewart, while he stated that he was a tenant of Boyd in 1937, did not comprehend his status as a tenant in 1936. He carried some produce to his stepfather, Boyd, as rental upon the assumption that he was working for him. While he was told to deliver same to Nutt, he did not fully appreciate to what arrangement it was pursuant. It is true that Nutt testifies that he rented the place to Stewart and that the following year Stewart executed a rent note to him but Stewart's understanding of this transaction was vague and the import and purpose of the "paper" signed by him was misunderstood.

Regardless of the effect of those decisions sustaining constructive notice where lands conveyed are in the possession of third persons as tenants or otherwise (Gordon v. Sizer, 39 Miss. 805; Stovall v. Judah, 74 Miss. 747, 21 So. 614, and cases cited), this principle finds exception where the possession is by relatives or members of grantor's family. Such exception finds additional strength where the record owner himself remains in possession and as here where a member of his household engages with the tenant in cultivating the land and where the owner continues to till part of the place. Hafter v. Strange, 65 Miss. 323, 3 So. 190, 7 Am. St. Rep. 659; Hiller v. Jones, 66 Miss. 636, 6 So. 465; Roderick v. McMeekin, 204 Ill. 625, 68 N. E. 473; Elliott v. Lane, 82 Iowa 484, 48 N. W. 720, 31 Am. St. Rep. 504; Rankin v. Coar, 46 N. J. Eq. 566, 22 A. 177, 11 L. R. A. 661; Burdick on Real Property, 521. There must be so substantial a change in

the occupancy of the property as to arrest the notice of a prospective purchaser. Where the grantor who is the record and actual owner remains in possession a mere attornment by him to the grantee in an unrecorded deed is not sufficient to charge a purchaser with mala fides. Loughridge v. Bowland, 52 Miss. 546. The fact that Boyd was permitted by Nutt to remain in possession strengthens not the position of Nutt but of Lay. Nor is the relationship between Nutt and Stewart whatever it was, as important as the appearances by which alone the technical bad faith of Chipley must be established. It is relevant to consider here the probable results to which an inquiry, if required, would lead. In this connection we find that the testimony that Boyd claimed the land in 1936 and 1937 relevant, although excluded by the learned chancellor. While we do not hold that Chipley was put upon inquiry, it is proper to notice that such inquiry would probably not have disclosed a situation inconsistent with that which was apparent. The argument that Nutt's possession by a tenant, Stewart, was the possession of Nutt is to assume that Stewart was his tenant, a circumstance not shown by the records, and not fully understood by Stewart. The use of part of the land by Stewart was not inconsistent with the title of Boyd who was both the apparent and the record owner. Levy v. Holberg, 67 Miss. 526, 7 So. 431; Loughridge v. Bowland, supra; Niles v. Cooper, 98 Minn. 39, 107 N. W. 744, 13 L. R. A. (N. S.) 49, note at page 96; Wood v. Price, 79 N. J. Eq., 620, 81 A. 983, 38 L. R. A. (N. S.) 772, Ann. Cas. 1913A, 1210; Canfield v. Hard, 58 Vt. 217, 2 A. 136; Wright v. Wood, 23 Pa. 120; Pope v. Allen, 90 N. Y. 298; Burdick, op. cit., supra. Chipley before his purchase had searched the records for six years back. The record owner was his grantor and we are unwilling to assent to the contention that there was an apparent change in the ownership which was inconsistent with the record title such as to arrest the attention and provoke suspicion or inquiry upon Chipley.

Our registry laws are designed to prevent just this sort of unfortunate dilemmas where one of two purchasers in good faith must suffer loss. We are compelled in our solution to follow the course which both law and equity has prescribed. Vigilantibus sed non dormientibus leges subveniunt.

Reversed and decree here for appellant.