In re GREAT PLAINS WESTERN RANCH COMPANY, INC., Debtor and Debtor-in-Possession.

C.R. LOUP, Sheldon M. Neider, S.M. Neider & Associates, Inc., L & N Farm and Cattle Company, and Mack Baughman, Plaintiffs/Counter-Defendants,

v.

GREAT PLAINS WESTERN RANCH COMPANY, INC., Defendant/Counter-Claimant.

In re GREAT PLAINS WESTERN CORPORATION, a California corporation, Debtor and Debtor-in-Possession,

WILSON COUNTY LAND COMPANY #1, a Texas limited partnership, by Wayne L. HILL, its General Partner; and Wilson County Land Company #2, a Texas limited partnership, by Hill & Company, Inc., its General Partner, Plaintiffs,

v.

GREAT PLAINS WESTERN CORPORATION, a California corporation, and all persons unknown, claiming any legal or equitable right, title, estate, lien or interest in the property described in the complaint adverse to plaintiffs' title, or any cloud upon plaintiffs' title, Defendants.

GREAT PLAINS WESTERN CORPORATION, a California corporation, Counterclaimant,

v.

WILSON COUNTY LAND COMPANY #1, a Texas limited partnership, Wilson County Land Company #2, a Texas limited partnership, Wayne L. Hill, Hill & Company, Inc., and all persons claiming by, through, or under such persons, and all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the First Amended Counterclaim adverse to counter-claimant's title or any cloud on counter-claimant's title thereto, named as DOES 1–100, inclusive, Counterdefendants.

Bankruptcy Nos. LA 82–17264–JA, LA 82–17252–JA. Adv. Nos. LA 83–0170–JA, LA 83–0381–JA.

United States Bankruptcy Court, C.D. California.

April 6, 1984.

F. Shaun Burns, Michael A. Shimokaji, Dale & Lloyd, La Jolla, Cal., Stephen F. Biegenzahn, Buchalter, Nemer, Fields, Chrystie & Younger, Los Angeles, Cal., for defendants/counterclaimants.

Thomas M. Allen, Ted R. Frame, Inc., Coalinga, Cal., for plaintiffs/counterdefendants.

Lawrence A. Diamant, Robinson, Wolas & Diamant, Los Angeles, Cal., for creditors' committee.

James E. Eichstaedt, United States Trustee, Los Angeles, Cal., U.S. trustee.

## MEMORANDUM OF DECISION

JOHN D. AYER, Bankruptcy Judge.

### INTRODUCTION

This is a dispute over ownership rights in two properties, a Texas ranch and a Mississippi farm. The debtor holds record title, but the plaintiffs claim ownership by constructive trust. The constructive trust claims rest on an assertion that the record title holder defrauded them out of the purchase price prior to the filing of this Chapter 11 case. For purposes of analysis, I am willing to assume that the record title holder did in fact defraud the plaintiffs. Nonetheless, I hold that the property belongs in the bankruptcy estate.

### I

### BACKGROUND

For several years Great Plains Western Corporation, together with its subsidiary, Great Plains Western Ranch Company, Inc. (collectively "GPW") promoted tax shelter limited partnerships. GPW conceived ventures in agriculture and cattle-raising. GPW located potential investors and created limited partnerships with itself as general partner and the investors as limited partners. The limited partners got (or hoped to get) profits and tax benefits. GPW got management fees, commissions and profit participations. On occasions GPW, as a corporation, also sold property to itself, as a general partner. GPW was involved in some 100 limited partnerships over the past 10 years. In October, 1982, beset with cash flow problems, GPW filed Chapter 11 cases for itself and 10 of its limited partnerships (but not including the plaintiffs in this case). GPW continues to function as a debtor-in-possession ("DIP"), 11 U.S.C. § 1101(1) (1982).

**L&N**

In 1975, GPW purchased a farm in Mississippi (the "farm"). In December, 1977,

C.R. Loup ("Loup") and Sheldon M. Neider ("Neider"), together with GPW, formed Loup & Neider Farm & Cattle Company, a California limited partnership ("L&N"), to engage in farming. Loup and Neider were the only limited partners and GPW was the general partner. GPW entered into a contract to sell the farm to L&N. Richard C. Chapman ("Chapman"), president of GPW, signed the contract for GPW as seller. William J. Dale, a vice-president of GPW, signed the contract for GPW, the general partner of L&N, as buyer. Loup and Neider contributed $220,000 in capital, promising to make additional payments of $11,000 per year thereafter. GPW undertook to manage the farm. The contract was recorded on May 10, 1978. For reasons no one disclosed in court, GPW never transferred a deed to L&N.

In October, 1981, Loup & Neider told GPW they intended to replace GPW with another general partner. Shortly thereafter Loup and Neider, purporting to act for L&N, leased the farm to Mack Baughman for a term of four years. They recorded the lease and apparently Baughman undertook the operation of the farm. Nevertheless, GPW continued to act as general partner of L&N. In May, 1982, Loup and Neider refused to make their prescribed $11,000 annual payment. Thereupon GPW declared that they were in default of their obligations to L&N, pursuant to the 1978 agreement. On May 13, 1982, Chapman, GPW's president, acting as L&N's general partner, quitclaimed the farm from L&N to GPW. The stated consideration was $10. On June 8, 1982, the quitclaim was recorded.

*Wilson County*

Wilson County's chronicle is simpler. In December, 1973, GPW purchased the Triple C Brangus ranch in Texas (the "ranch"). In 1977, GPW formed two limited partnerships, Wilson County Land Company #1 and Wilson County Land Company #2 ("Wilson County"). GPW through a subsidiary acted as general partner. GPW contracted to sell the ranch to Wilson County for $1.5 million, payable $200,000

down, with the balance payable in installments over five years. The contract provided that GPW would transfer a deed to Wilson County after Wilson County made the last payment. GPW asserts that Wilson County failed to make the last payment and is in default. Wilson County also, at some point, replaced GPW with another general partner.

*Procedure*

In January, 1983, L&N and Wilson County filed separate, although substantially identical, complaints in this court against GPW. Each alleges, among other things, that GPW fraudulently induced it to pay money for the real estate now in GPW's name. Each argues that the relevant state law permits the imposition of a constructive trust on the property to satisfy such a fraud claim. GPW in response moved for summary judgment, and it is that motion in each case that is before me now.

## II

### PROPERTY OF THE ESTATE

L&N and Wilson County (the "plaintiffs") rely chiefly on Section 541 of the Bankruptcy Code, defining property of the bankruptcy estate, 11 U.S.C. § 541 (1982). Property of the estate under Section 541, they argue, includes (with exceptions not here relevant) only property that was property of the debtor. And that is true. As the Supreme Court said, "The Bankruptcy Act simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors." *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 135–36, 83 S.Ct. 232, 234–35, 9 L.Ed.2d 190, 193 (1932). *See also* 4A COLLIER ON BANKRUPTCY ¶ 541.13 (15th ed. 1983). For purposes of analysis on this summary judgment motion, they argue, I must assume that this property would not be property of the debtor at state law. And that is true also. *See generally* 6 MOORE'S MANUAL FEDERAL PRACTICE AND PROCEDURE §§ 56.02[1] and 56.04[1]

(1983).[1] Finally, they assert that a constructive trust may be imposed in a bankruptcy proceeding. Once again, I agree. *Cf. In re Kennedy & Cohen, Inc.*, 612 F.2d 963, 966 (5th Cir.1980) (constructive trust "may be imposed ... under appropriate circumstances"), *In re Angus*, 9 B.R. 769 (Bkrtcy.D.Or.1981).

█ The difficulty with all this is that it is only a partial analysis. For the question is not merely what becomes property of the estate. A bankruptcy proceeding is forum not merely for the adjudication of claims between plaintiff and defendant. Rather, it is a multilateral proceeding for the adjudication of rights among a variety of interests. GPW as DIP has the rights and powers of a bankruptcy trustee. *See* 11 U.S.C. § 1107 (1982). As trustee, it takes rights derivative from the rights of a debtor pursuant to Section 541. But as trustee GPW also exercises a broad range of other rights and powers—rights and powers in no way available to the debtor at state law. *See generally* 11 U.S.C. §§ 542–553 (1982). Among others, the trustee gets certain rights and powers that might have been exercised by third parties at state law, quite apart from any rights of the debtor. One of these is the power of a hypothetical bona fide purchaser of real property, under 11 U.S.C. § 544(a)(3) (1982). And it is to this power that I now turn.

### III

### THE STRONG–ARM CLAUSE

As COLLIER explains, it is axiomatic that the estate includes property of the debtor, and also defenses that might be available to the debtor. *See* 4B COLLIER ON BANKRUPTCY ¶ 70.45 (14th ed. 1978). But COLLIER continues:

> But such defenses are often not enough. More frequently that other-

wise, the bankrupt will be estopped to deny the validity of his acts, obligations and transfers. If this estoppel is imputed to the trustee, he may be helpless to avoid or set aside the results of the bankrupt's chicanery, the favoritism of certain creditors, or other acts or transfers that are in derogation of the Bankruptcy Act's paramount purpose: equality of distribution among all creditors. *Id.*

The drafters of the Bankruptcy Act of 1898 evidently understood this principle. That act provided that the "trustee ... shall ... be vested ... the title of the bankrupt ... to all ... property ... which might have been levied upon and sold under judicial process against him." *See* Bankruptcy Act of 1898 § 70a(5), *reprinted in* 4A COLLIER ON BANKRUPTCY ¶ 70.48[1] (14th ed. 1978). Taken at face value, this provision might itself appear to have armed the trustee with creditors' rights. But the Supreme Court in 1906 gave a restrictive reading to Section 70a(5). *York Manufacturing Co. v. Cassell*, 201 U.S. 344, 26 S.Ct. 481, 50 L.Ed. 782 (1906). In *York*, the creditor held an unfiled conditional sales contract valid against the debtor but void against lien creditors at state law. The court held that the trustee took only the rights of the debtor—that he took the property encumbered by the conditional sales contract. *Compare Security Warehousing Co. v. Hand*, 206 U.S. 415, 27 S.Ct. 720, 51 L.Ed. 1117 (1907) (limiting *York*). Congress responded swiftly, adding a sentence to the Bankruptcy Act, specifically reposing in the trustee the powers of a lien creditor or a judgment creditor. *See* § 47a(2), Act of June 25, 1910, 36 Stat. 838. The legislative history made it clear that the purpose of the amendment was to overrule *York*. *See* 45 Cong.Rec. 2277 (1910). Judicial gloss quickly established that the trustee enjoyed these creditors' rights

---

**1.** While I operate throughout on the assumption that GPW as general partner did defraud the limited partners, I need to stress that this is an assumption for purposes of analysis only, and I mean to intimate no finding at all on the point. A tax-shelter limited partnership is much like a marriage in the respect that it is fraught with a kind of dangerous intimacy, ripe with opportunity for betrayal, and with opportunity for a sense of betrayal, even where no betrayal in fact exists. The partners' belief that they have been defrauded, however sincere, is not even evidence on the point.

whether or not there was an actual creditor who could have exercised them. *See, e.g., Albert Pick & Co. v. Wilson,* 19 F.2d 18 (8th Cir.1927); *In re Press Printers & Publishers, Inc.,* 23 F.2d 34 (3d Cir.1927), *cert. den.* 276 U.S. 633, 48 S.Ct. 339, 72 L.Ed. 742 (1928); *see generally In re Horton,* 31 F.2d 795, 799 (1928) (strong-arm clause intended to "cut off secret and undisclosed claims against the [debtor's] property"); *Millikan v. 2d Nat. Bank,* 206 F. 14, 16 (1913) (strong-arm clause designed to "cut by the roots all hidden liens"); *Holt v. Henley,* 232 U.S. 637, 34 S.Ct. 459, 58 L.Ed. 767 (1913). The 1910 amendment, carried forward through various permutations, came into the Bankruptcy Act of 1978 as 11 U.S.C. § 544(a), the trustee's strong-arm power. *See generally* House Report No. 595, 95th Cong., 1st Sess. 570 (1977); Senate Report No. 989, 95th Cong., 2d Sess. 85 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

The strong-arm clause may be read as relying on the principle of ostensible ownership—the principle that, other things being equal, what the creditor sees ought to be what the creditor gets. *See generally* Baird & Jackson, *Possession and Ownership: An Examination of the Scope of Article 9,* 35 Stan.L.Rev. 175 (1983), Baird, *Notice Filing and the Problem of Ostensible Ownership,* 12 J.Legal Stud. 53 (1983). There seem to be at least two important reasons why the idea of ostensible ownership bulks so large in bankruptcy law. First, it helps to police against fraud on the part of debtors—fraud that may occur with or without the collusion of creditors. Secondly, quite apart from any imputation of fraud, it helps to permit the kind of reliance said to be essential to a dynamic commercial economy. *See generally* Gilmore, *The Commercial Doctrine of Good Faith Purchase,* 63 Yale L.J. 1057 (1954).

■ There are some difficulties here. First, while the strong-arm clause seems to protect against fraud, the Code nowhere requires any showing of actual fraud in order to bring the strong-arm clause into play. Taking the Code as it stands today, it seems to permit me to assume (as I do here assume) that GPW may have defrauded the plaintiffs in this case; still, it appears that I am to permit such a fraud so as to protect against the risk of fraud that might arise if I permitted covert interests. This principle was not always so clearly established. Indeed, under the Bankruptcy Act of 1898, a claimant rescinding for fraud might sometimes achieve a dignity inconsistent with the principles of the strong-arm clause. *See generally* 4A COLLIER ON BANKRUPTCY ¶ 70.41 (14th ed. 1978), Slain & Kripke, *The Interface Between Securities Regulation and Bankruptcy—Allocating the Risk of Illegal Securities Issuance Between Securityholders and the Issuer's Creditors,* 48 N.Y.U. L.Rev. 261 (1973); Davis, *The Status of Defrauded Securityholders in Corporate Bankruptcy,* 1983 Duke L.J. 1, 9. But the Bankruptcy Code of 1978 at once expanded the powers available under the strong-arm clause (*see infra*) and limited the rights available to rescinding fraud claimants; *see* 11 U.S.C. §§ 546(c), 510(b) (1982).

The point is put even more sharply in the case of reliance. Not only do we require no showing of reliance; quite the contrary, the trustee is expressly excused from showing that there was any competing claimant who might have relied. *Compare* 11 U.S.C. § 544(a) (1982) *with* 11 U.S.C. § 544(b) (1982). Evidently, we believe both reliance and fraud to be so likely that we do not wish to put creditors to the expense and inconvenience of proof.

■ It is no answer to say that the DIP exercising the trustee's power is the same entity as the GPW who committed the supposed fraud. For the DIP, though physically the same as GPW, is conceptually separate for purposes of bankruptcy law. Presumably if the plaintiffs believe that GPW cannot be trusted with that power, they may seek the appointment of a trustee under 11 U.S.C. § 1106 (1982) ("for cause including fraud, dishonesty," etc.). But that is another matter. We have already seen how the trustee has at least a dual aspect, deriving rights from the debtor and

powers from creditors. Correspondingly, it is fair to say that the DIP also has a dual aspect, as debtor and also as trustee. Similarly, by way of recapitulation, it may be useful to recall that GPW has at least a triple aspect: as debtor, as general partner of other debtors, and as DIP. Like the comic hero of a Gilbert and Sullivan operetta, he is perpetrator in one conception, victim in another, and innocent bystander in a third. This analysis requires some effort at abstraction, but it seems to be what the Code prescribes. *Cf. In re Browning Crane & Shovel Co.*, 133 F.Supp. 653 (N.D. Ohio 1955); *In re Hurt*, 129 F.Supp. 94 (S.D.Cal.1955).

And that is why Section 541 does not end the inquiry in this case. Even conceding that the property rights of the estate are derivative from the property rights of the debtor, still the trustee enjoys additional powers quite independent of his powers under Section 541, and in no way derivative from the debtor's rights at state law. Failure to consider Section 544 together with Section 541 may lead to misleading generalizations and sometimes to unsound results. *See, e.g.,* 4 COLLIER ON BANKRUPTCY ¶ 541.13 (15th ed. 1983), *In re Fieldcrest Homes*, 18 B.R. 678 (Bkrtcy.N.D.Ill.1982). But these do not withstand careful scrutiny.

## IV

## THE TRUSTEE'S POWER

*Federal Law*

■ The trustee's powers under Section 544(a), like his rights under Section 541, are derivative. *See generally* Countryman, *The Use of State Law in Bankruptcy Cases*, 47 N.Y.U.L.Rev. 631 (1972). But they derive from a different source. Under Section 541, his rights are derivative from the rights of the debtor. Under the predecessors of Section 544(a), his rights were derivative from the rights of creditors. *See* Bankruptcy Act of 1898 § 47a(2), *reprinted in* 4B COLLIER ON BANKRUPTCY ¶ 70.47[1] (14th ed. 1978) (repealed); Bankruptcy Act of 1898 § 70c,

*reprinted in* 4B COLLIER ON BANKRUPTCY ¶ 70.47[2] (14th ed. 1978) (repealed). The substance of this provision was carried over into the Bankruptcy Act of 1978. *See* 11 U.S.C. § 544(a)(1), (2). With respect to personal property, it makes sense to dovetail the rights of the trustee with the rights of creditors, because the most relevant state priority law is in the Uniform Commercial Code, which builds its priority scheme primarily on the rights of creditors. *See, e.g.,* U.C.C. § 9–301(1)(b). But the law of real property is built around the recording acts. And recording acts frequently speak not of the rights of creditors, but rather of the rights of bona fide purchasers. *See, e.g.,* 10 AMERICAN LAW OF PROPERTY § 17.29 (1952). Hence, the 1978 Code added a new provision to the strong-arm clause in Section 544(a)(3). It provides that the trustee shall have the powers of a hypothetical bona fide purchaser of real property. He is limited as a prospective bona fide purchaser would be limited. *See, e.g., In re Euro-Swiss Intern. Corp.*, 33 B.R. 872 (Bkrtcy.S.D.N.Y.1983); *In re Richardson*, 23 B.R. 434 (Bkrtcy.D.Utah 1982); *In re Jones*, 20 B.R. 988 (Bkrtcy.E.D.Pa.1982); *In re Lewis*, 19 B.R. 548 (Bkrtcy.D.Id.1982). But he takes free of competing interests of which a bona fide purchaser would take free. *See, e.g., In re Gurs*, 27 B.R. 163 (Bkrtcy. 9th Cir.B.A.P.1983); *McCannon v. Marston*, 679 F.2d 13 (3d Cir.1982). The trustee exercises that power without regard to his own actual knowledge. *See* 11 U.S.C. § 544(a)(3) (1982). This is particularly important where, as here, there is no independent trustee and the debtor, who by definition has actual knowledge of latent defects in his own title, himself exercises the powers of the trustee. *See In re Washburn & Roberts, Inc.*, 17 B.R. 305 (Bkrtcy.E.D.Wash.1982). In any event, since we must look to state law to determine the rights of a bona fide purchaser, it is to state law that I now turn.

*Mississippi Law*

Mississippi law provides:

A conveyance of land shall not be good against a purchaser for a valuable consideration without notice ... but after recording with the clerk, the priority of the time of filing shall determine the priority of all conveyances of the same land as between the several holders of such conveyances.

Miss.Code Ann. § 89-5-1 (1972)

■■■ Thus, in Mississippi, one who wishes to claim title to real property is bound by adverse claims disclosed by documents recorded with the clerk in the chain of title whether or not she actually saw those documents. *Giesbrecht v. Smith,* 397 So.2d 73, 77 (Miss.1981); *Jenkins v. Bates,* 230 Miss. 406, 92 So.2d 655, 657 (1957); *Barksdale v. Learnard,* 112 Miss. 861, 73 So. 736, 738 (1917); *see generally* 6A POWELL ON REAL PROPERTY ¶ 905[2] (1982). In addition, if any person is in possession of the property and claims an interest inconsistent with that record, then one who wishes to take title must use reasonable means to ascertain the nature of the possessor's interest. *Lay v. Nutt,* 194 Miss. 83, 11 So.2d 430, 432 (1943). By statute and case law, Mississippi has also made it clear that a person is not deprived of his status as a bona fide purchaser merely because there is a quitclaim deed in his chain of title. *See* Miss.Code Ann. § 89-1-39 (1972), *Owen v. Potts,* 149 Miss. 205, 115 So. 336, 338-9 (1928); *Reddoch v. Williams,* 129 Miss. 706, 92 So. 831, 836 (1922); *Cf.* 6A POWELL ON REAL PROPERTY ¶ 905[2].

■■■ GPW as transferee took by quitclaim in the chain of title from GPW as transferor/partner. The transfer sufficed to extinguish any latent competing claim as against GPW as DIP/trustee. Baughman's possession as lessee does nothing to controvert this result. Loup and Neider, in leasing to Baughman, purported to act for L&N. GPW as transferor/partner purported to act for L&N. Thus, Baughman's possession was perfectly consistent with the state of record title. On this analysis, I hold that GPW as DIP/trustee

may bring the property into the estate under Section 544(a)(3).

*Texas Law*

Texas law provides: "All bargains, sales and other conveyances whatever, of any land, tenements and hereditaments ... shall be void as to all creditors and subsequent purchasers for a valuable consideration without notice, unless they shall be acknowledged or proved and filed with the clerk, to be recorded as required by law." Tex.Stat.Ann. art. 6627 (Vernon 1983). 6A POWELL ON REAL PROPERTY ¶ 905[1] (1982).

■■■ Thus, in Texas, as in Mississippi, one who wishes to claim title to real property is bound by adverse claims disclosed by documents recorded with the clerk in the chain of title whether or not she actually saw those documents. *Southwest Title Ins. Co. v. Woods,* 449 S.W.2d 773 (Tex.1970); *Brown v. Ackerman,* 17 S.W.2d 771, 772 (Tex.Com.App.1929); *Lumpkin v. Adams,* 74 Tex. 96, 11 S.W. 1070, 1072 (1889). Similarly in Texas, one is deemed to know of an unrecorded deed if the party claiming under that deed is in open, visible and unequivocal possession. *Whitaker v. Felts,* 137 Tex. 578, 155 S.W.2d 604 (1941); *cf. Park v. Sweeten,* 270 S.W.2d 687 (Tex.Civ.App.1954).

■■■ Nothing in the chain of title ever showed any interest passing to Wilson County. GPW as DIP/trustee knows nothing of the activities of GPW as transferor/partner, or as an independent entity. Hence again, GPW as DIP/trustee may exercise the power of a bona fide purchaser under Section 544(a)(3).

## CONCLUSION

The practical result of all this is to bring the property into the estate for the benefit of creditors at the expense of limited partners. At the risk of laboring the point, let me emphasize again that this says nothing at all about the rights of the limited partners *vis a vis* the general partner. On the contingency that creditors are in fact paid

off, then the limited partners and the general partners may be left to do battle over the remainder, and it is then that the court may have to face the issue of fraud. But that day is at least a long way away, and in the ordinary bankruptcy case, it is a day that never arrives. There is no point in trying to deal with the issue now.

There are many anomalies here. The strong-arm clause protects reliance, and protects against fraud, without any showing either of reliance or of fraud. The strong-arm clause permits an (assumed) fraud against the plaintiffs in this case to protect against a (hypothetical) fraud by the debtor in which the plaintiffs by definition might have no part. The strong-arm clause permits the alleged wrongdoer to assert the rights of innocent parties against his own supposed victim. All of this is, to say the least, a remarkable result. Nonetheless, as I have tried to show, I think it is consistent alike with the letter and with the spirit of the Bankruptcy Code. Therefore, I grant GPW's motion for summary judgment. This opinion contains findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. Judgment will be entered accordingly.