In re Lewis CHAPMAN, Debtor.

Bankruptcy No. 84–00034.

United States Bankruptcy Court,
District of Columbia.

March 11, 1985.

**664**

Cynthia A. Niklas, Pitts, Wike & Niklas, Washington, D.C., Trustee.

John W. Garland, Washington, D.C., for debtor.

Richard G. Wise, Washington, D.C., for Perpetual Bank.

Beatrice E. Hendricks, Asst. Corp. Counsel, D.C., Washington, D.C., for District of Columbia.

## OPINION AND ORDER

GEORGE FRANCIS BASON, Jr., Bankruptcy Judge.

This matter is before the Court for consideration as to whether to confirm the Debtor's Second Amended Plan ("the Plan"). At the confirmation hearing, the three adverse parties (the Debtor, the first trust holder, and the holder of second and third trusts) were directed to submit post-hearing memoranda, and the Court also granted leave to each such party to file a response to the other parties' memoranda.

First trust holder Perpetual American Bank, F.S.B. ("Perpetual") submitted a memorandum stating that (a) the regular monthly deed of trust payment due it (payable outside the Plan) is $364.00, not $359.00, and (b) the arrearages total $16,-286.87, not $10,770.00. Other than those two items, Perpetual had no objection to the Plan.

Five days later, the Debtor filed his memorandum, which did not respond to Perpetual's assertions but was directed solely to the assertion that the Plan meets the liquidation test of 11 U.S.C. § 1325(a)(4) and hence is confirmable under controlling precedent in this jurisdiction. *In re Barnes*, 689 F.2d 193 (D.C.Cir.1982). The Debtor's figures are confusing. Apparently, he places a value of $65,000 on the residence, of which $7,500 is claimed exempt, and he places a value of $4,660 on all his other property, of which $4,510 is claimed exempt. (The claim to exemptions has not been challenged.) Thus, according to the Debtor, the non-exempt property of the estate totals $57,650. So far, so good. However, the Debtor then asserts that the total of secured and priority debts, "set out in the Chapter 13 Statement and Plan" is $60,944. This figure, however, does not comport with what appears in the Chapter 13 Statement and Plan, nor with any other set of figures which has been presented to the Court.

In order to determine whether the liquidation test has been met and whether the Debtor's Plan should be confirmed, the

Court will analyze the figures presented by the Debtor, by first trust holder Perpetual, and by the District of Columbia Department of Housing and Community Development ("HCD"), after first dealing with questions relating to the appropriate treatment to be accorded to HCD's second and third trusts.

HCD filed a memorandum a week after the Debtor's, and later filed a supplemental memorandum. HCD holds a second trust on the Debtor's residence in the face amount of $13,456, securing a six-month non-interest-bearing loan made to the Debtor for historic-preservation rehabilitation of the residence. HCD also holds a $49,390, six-month, non-interest-bearing note and deed of trust on the residence. Both of these trusts were to be paid off in part through pro rata portions of a federal historic-preservation grant which HCD expected to receive, with the remaining unpaid principal payable at 3% interest over up to 20 years.

■ The $49,390 deed of trust was never recorded. Therefore, facially at least, it would appear that the plain language of 11 U.S.C. § 544(a)(3) requires the $49,390 claim to be treated as unsecured. This "strong-arm clause" vests the trustee in bankruptcy with the power to avoid any transfer of real property that would be voidable by a bona fide purchaser, "whether or not such a creditor exists" and "without regard to any knowledge of the trustee or of any creditor." Section 544 applies in Chapter 13 cases, 11 U.S.C. § 103(a), with the result that the trustee's avoidance powers may be exercised by the Debtor. *See generally* 11 U.S.C. §§ 1302–04.

HCD makes two policy arguments against this result. First, noting that the

unrecorded deed of trust is valid as between the parties under local law, D.C. Code §§ 45–701 and 45–801, HCD contends that the lien should not be avoided because "[t]here is no claim being made by any other person that is impaired by recognition of" the lien. To some extent that contention is factually erroneous. The Debtor in his Amended and Second Amended Chapter 13 Statements lists Thorp Financial Services ("Thorp") as an unsecured creditor. Thorp's claim might be impaired in two senses by recognition of HCD's third-trust lien. First, if the lien is recognized, the Debtor's Plan might be rendered unconfirmable, as a result of which Thorp would not receive the distribution proposed to be made to it under the Plan.[1] Second, if the lien is recognized, Thorp might receive less in the event of a Chapter 7 liquidation than if HCD's claim is treated as unsecured.[2] However, Thorp has not filed a proof of claim, and the time for creditors to file claims has expired.[3] Thus, it is at least highly questionable whether Thorp's claim should be taken into account for the purpose of determining whether there is any claim by any other person that would be impaired by recognition of HCD's third-trust lien. The statutory language would seem to make that inquiry irrelevant, by making the strong-arm clause operable "whether or not such a creditor exists" and "without regard to any knowledge of ... any creditor." But, as discussed below, the cases do afford controlling significance to whether there is any creditor that would benefit through strong-arm-clause lien avoidance, or whether only the Debtor would benefit.

■ HCD's second policy argument against strong-arm-clause lien avoidance is that "[i]t would be inequitable and uncon-

---

**1.** But the Plan proposes to pay Thorp only $1.00, which this Court could well treat as being such a *de minimis* amount as not to be worthy of consideration.

**2.** But it appears that Thorp would receive nothing in a Chapter 7 liquidation whether HCD's third trust claim is treated as secured or unsecured, because (as shown below) the Debtor's equity above the first and second trust is only

$1,775.18, and that amount is completely absorbed by the Debtor's claim of exemptions.

**3.** Conceivably, Thorp's time to file a claim could be extended because the Debtor failed to notify Thorp of this case in timely fashion. Alternatively, perhaps the Debtor or the Trustee could file a claim in the name of Thorp pursuant to Bankruptcy Rule 3004.

scionable" for the Debtor to avoid liability, because the Debtor has gained the benefit of increased value of his home as a result of HCD's two home-rehabilitation loans. It is true that HCD is the one that failed to record the deed of trust, and the Debtor neither caused nor contributed to that error; he is at most an innocent beneficiary of that error. Nevertheless, this Court is persuaded by its review of the cases that strong-arm-clause lien avoidance is permitted solely to benefit creditors, and where it will benefit only the Debtor, and not any creditor, the courts decline to permit lien avoidance.

The leading case in this jurisdiction is *In re Parkwood*, 461 F.2d 158 (D.C.Cir.1971). There, reversing lower-court decisions, our Court of Appeals permitted a trustee to utilize the former Bankruptcy Act's strong-arm clause to challenge the validity of deeds of trust, but did so because "[i]n so doing, the trustee is acting for the benefit of all creditors and not ... to create a 'windfall' for the reorganized corporations whose affairs are being administered." *Id.* at 163. Likewise, in *In re Great Plains Western Ranch Co., Inc.*, 38 B.R. 899, 11 B.C.D. 894 (Bankr.C.D.Cal.1984), the bankruptcy court upheld the claim to realty of a debtor-in-possession as hypothetical bona fide purchaser under the strong-arm clause, against limited-partnership investors claiming ownership of the realty (by constructive trust) because of the debtor/general partner's alleged pre-petition fraud. The court noted the anomaly that "[t]he strong-arm clause permits the alleged wrongdoer to assert the rights of [hypothetical] innocent parties against his own supposed victim." "Nonetheless," the court held, this result "is consistent alike with the letter and with the spirit of the Bankruptcy Code." *Id.*, 39 B.R. 899, 907, 11 B.C.D. at 898–99. But the court there specifically observed, "at the risk of laboring the point," that the decision was limited to protection of creditors and "says nothing at all about the rights of the" allegedly defrauded investors *vis a vis* the allegedly

defrauding debtor itself. *Id.*, 39 B.R. 899, 906, 11 B.C.D. at 898. Finally, most pertinent is *In re Vintero Corp.*, 735 F.2d 740 (2d Cir.1984). There the court permitted a debtor-in-possession to avoid an unrecorded and hence unperfected security in a ship, but only insofar as necessary for the benefit of the debtor's unsecured creditors. "Vintero was given the right to avoid [the unperfected creditor's] security interest in order to protect such third parties, not to create a windfall for Vintero itself.... To the extent that other creditors of Vintero are not affected adversely by enforcement of [the unperfected creditors] security interest, there is no reason why such interest should not be enforced." *Id.* at 742.

■ Based on these precedents, and in view of the fact that the Debtor's Plan provides only a *de minimis* benefit (if that much) to only one general unsecured creditor, this Court holds that the strong-arm clause should not be applied in this case to invalidate HCD's third-trust security interest in the Debtor's residence.

■ This holding does not end the inquiry, however, for another provision of the Bankruptcy Code provides for treatment of most of HCD's third-trust claim as unsecured without creating any windfall for the Debtor and without depriving HCD of the benefit of the bargain it made for collateral security. That provision is 11 U.S.C. § 506(a). Under subsection 506(a), a creditor has a secured claim only to the extent of the value of the property which stands as collateral; any excess of the claim above the value of the property is, in bankruptcy law as it is in fact, an unsecured claim. *Brace v. State Farm Mutual Auto, Ins. Co.*, 33 B.R. 91 (Bankr.S.D.Ohio 1983); *In re Lamar*, 32 B.R. 237 (Bankr.W.D.La.1983); *In re Tanner*, 14 B.R. 933 (Bankr.W.D.Pa.1981); *see United States National Bank v. Chase National Bank*, 331 U.S. 28, 67 S.Ct. 1041, 91 L.Ed. 1320 (1947); *In re Moralez*, 618 F.2d 76 (9th Cir.1980).[4]

4. Since this is a Chapter 13 and not a Chapter 11 case, the creditor's election under § 1111(b) to

have the entire claim treated as a secured claim,

The practical effect of holding that the Debtor can partially avoid HCD's third-trust lien under subsection 506(a) but cannot entirely avoid that lien under subsection 544(a)(3) (the strong-arm-clause) is that the Debtor must pay a portion of HCD's third trust, up to the full extent of the value of the Debtor's home, without deduction on account of his claim of exemptions.

The Debtor argues that HCD's $13,456 second deed of trust should be reduced in amount to $5,450, reflecting a pro rata portion of the federal grant to HCD which was to be used as partial payment for both deeds of trust. HCD argues in its memorandum that it has not in fact received that grant, although its witness testified to the contrary at the hearing. It is not necessary to resolve that factual conflict for two reasons. First, to any extent that HCD's second trust is reduced, the result will be simply to increase the secured portion of HCD's third-trust claim; thus the Debtor will owe the same total amount to HCD, whatever the amount of the second trust. Second, this Court concludes that it would be inequitable to permit the Debtor to obtain the benefit of the federal grant while remaining free of the burden of a large portion of the "enlarged Note" (incorporating a pro rata portion of the $49,390 as well as the $13,456 note) which he was to execute as a condition precedent to obtaining that benefit.

The penultimate question to be resolved is: What is the value of the Debtor's property? That question is determinative both as to whether the liquidation test of 11 U.S.C. § 1325(a)(4) has been met and also as to what amount must be paid to HCD in order to satisfy the secured portions of its claims. HCD asserts that the fair market value of the Debtor's residence "is more accurately stated as $84,000," rather than the $65,000 figure put forth by the Debtor in his post-hearing memorandum. HCD's valuation is based on a one-page affidavit by an HCD employee who conducted a "window inspection" of the premises and concluded the "range of value" to be "between $80,000 to $85,000" based on three "comparable sales" whose comparability is nowhere described in the record of this case. At a lift-stay hearing in March 1984 (at which HCD was represented), Perpetual presented an appraisal of $65,000 and the Debtor presented an "affidavit as to value" of $71,000. Subsequent to the lift-stay hearing, no party has sought to present any further evidence on value, other than HCD's affidavit. Perpetual's appraisal appears to be by far the most solidly based of the three estimations. Hence, this Court will use a figure of $66,000 as its best estimate of value for purposes of confirmation.[5]

The Court calculates the amounts due to Perpetual on its first trust as follows:

Per amended proof of claim, filed 2/17/84:

| | |
|---|---|
| Principal | $36,168.10 |
| Interest | 5,722.73 |
| Escrow deficiency | 1,352.57 |
| Late charges | 245.30 |

Plus, per Perpetual's post-hearing memorandum:

| | |
|---|---|
| Property inspection fee | $ 11.00 |
| Foreclosure expenses, Jan. 1983 | 1,185.90 |

"notwithstanding section 506(a)," does not apply.

One case holds that, although a third trust "is unsecured pursuant to § 506(a)" for purposes of distribution under a Chapter 13 plan, nevertheless the lien of that trust is "not avoidable and passes through the debtors' bankruptcy proceeding unaffected," unless the debtor objects to allowance of the claim under § 502(a) of the Bankruptcy Code. *In re Spadel,* 28 B.R. 537 (Bankr.E.D.Pa.1983). Although this Court does not necessarily agree with the reasoning of the *Spadel* court, the Debtor may wish to file appropriate pleadings under § 502(a), in order to avoid possible future controversy.

**5.** The Court notes the legislative history to the effect that "a valuation early in the case in a proceeding [for relief from the automatic stay] under sections 361–363 would not be binding upon the debtor or creditor at the time of confirmation of the plan." S.Rep. No. 95–989 (1978), p. 68, U.S.Code Cong. & Admin.News 1978, 5787, 5854. However, in this case, none of the parties presented evidence of value at the confirmation hearing, and HCD's post-confirmation valuation is simply not sufficiently well supported to be worthy of serious consideration.

| | |
|---|---|
| Foreclosure expenses, Jan. 1984 | $ 2,431.22 |
| Collection expenses, bankruptcy proceedings | 3,652.00 |
| TOTAL | $50,768.82 |

Thus, the net equity in the property above the first and second trusts is:

| | | |
|---|---|---|
| Fair market value | | $66,000.00 |
| Less, first deed of trust | $50,768.82 | |
| Less, second deed of trust | 13,456.00 | |
| | $64,224.82 | $64,224.82 |
| NET EQUITY | | $ 1,775.18 |

Therefore, the Debtor must pay on HCD's second and third trusts an amount sufficient to yield a value, as of the effective date of the Plan, of $15,231.18 ($13,456.00 on the second trust; $1,775.18 on the third trust). 11 U.S.C. § 1325(a)(5)(B)(ii). Since HCD has already agreed with the Debtor to grant him a non-interest bearing loan for up to six months and thereafter a 3% interest rate for up to 20 years, this Court holds that the Debtor need pay no more than 3% per year on the $15,231.18, from the effective date of his Plan, in order to comply with this "present value" requirement. *See In re American Mariner Industries, Inc.*, 734 F.2d 426, 435, n. 12 (9th Cir.1984) ("[N]oting that § 506(b) allows interest to *oversecured* creditors at the *contract* rate ..., an undersecured creditor would receive a windfall if the market rate of interest exceeds the contract rate."). Similarly, subsection 1322(b)(2) is no impediment to confirmation of a plan calling for payments stretched out over up to five years, even though the existing second and third trust notes are already overdue, because HCD has already agreed with the Debtor, in those same notes, to stretch out payments over a much longer period, up to 20 years.

■ Finally, we consider whether the Debtor's proposed treatment of unsecured creditors comports with the "best interest" test of subsection 1325(a)(4) and the "no unfair discrimination" test of subsection 1322(b)(1). The Debtor's unsecured creditors consist of HCD, with the unsecured portion of its third trust claim in the amount of $47,614.82 ($49,390.00 less the

$1,775.18 secured portion of the claim), and Thorp with a $1,887.00 claim, of which $700.00 is undisputed. The Debtor proposes to divide these two claims into two separate classes, with HCD's Class A claim being paid $153.00 and Thorp's Class B claim being paid $1.00. The Debtor's justification for this disparate treatment is that the claim in Class A "is substantially larger" and "was for improvements on the principal residence of the" Debtor.

As to the best interest test: The Debtor's real property obviously would produce no non-exempt equity for unsecured creditors in the event of a Chapter 7 liquidation. However, the Debtor has placed a value of $4,660.00 on all his other property, and has claimed exemptions totaling only $4,510.00. Thus, the Debtor has non-exempt personal property totaling $150.00. His proposal to pay a total of $154.00 to unsecured creditors meets the best interest test.

As to the "no unfair discrimination" test: Following the guidelines laid down in *In re Barnes*, 689 F.2d 193, 202 (D.C.Cir.1982), this Court believes that the discrimination between the two classes in this case is "fair," notwithstanding "the basic principle that all unsecured creditors should be treated alike," because the amount that each of the two creditors will receive is so small, both in dollar amount and as a percentage, as to make the disparity between them inconsequential.[6]

In conclusion: The Debtor's Second Amended Plan cannot be confirmed as it now stands. The Court will confirm that Plan if it is further amended so as to provide for (1) payment of arrearages to first trust holder Perpetual of $16,286.87, not $10,770.00; (2) payment of HCD's second trust in the full amount of $13,456.00, rather than only $5,450.00; and (3) payment of $1,775.18 on HCD's third trust. Provision should be made for the addition of 3% per year simple interest to the princi-

---

**6.** The payment to HCD would constitute slightly more than 3/10ths of 1% of HCD's unsecured claim (−.0032132); the payment to Thorp would constitute between 1/10ths and 2/10ths of 1% of the undisputed portion of Thorp's claim (−.0014285) and about 1/2 of 1/10th of 1% of Thorp's entire claim (−.0005299).

pal amounts payable to HCD. The Plan's existing provisions for treatment of priority and general unsecured claims need not be changed. The Debtor may wish to amend the Plan so as to have regular monthly first trust payments to Perpetual made outside the Plan, at least initially, in order to save Trustee's charges. The changes suggested here may require that payments extend for longer than three years; if so, the Debtor should file an appropriate motion to extend the Plan. Alternatively, it is possible that the Debtor and HCD could agree to stretch out payment of the $15,231.18 secured debts due to HCD outside the Plan, along the lines earlier agreed to between them.

NOW THEREFORE IT IS ORDERED that confirmation of the Debtor's Second Amended Plan is hereby DENIED; and it is further

ORDERED that the Debtor is hereby granted leave to amend his Plan in accordance with this Opinion and Order at any time within thirty (30) days after entry of this Order, or within such additional time as may be hereafter ordered by this Court; and it is further

ORDERED that, if the Debtor fails to file a further amended plan within thirty days after entry of this Order, the Court may dismiss this case without further hearing.